732 N.E.2d 790 (2000)
314 Ill. App.3d 649
247 Ill.Dec. 735
In re M.J. and A.J., Minors (The People of the State of Illinois, Petitioner-Appellee,
v.
K.J., Respondent-Appellant).
No. 2-99-1186.
Appellate Court of Illinois, Second District.
July 7, 2000.
Rehearing Denied August 3, 2000.
*792 Donald P. Sullivan (Court-appointed), Rockford, for K.J.
Paul A. Logli, Winnebago County State's Attorney, Rockford, Martin P. Moltz, Deputy Director, Cynthia N. Schneider, State's Attorneys Appellate Prosecutor, Elgin, for the People.
Christine A. Degennaro, Office of the Public Defender, Guardian Ad Litem, Rockford, for A.J., M.J.
Justice RAPP delivered the opinion of the court:
Respondent, K.J., appeals from orders terminating her parental rights to her two children, M.J. and A.J. The presumed and putative fathers of the children are not parties to this appeal, having previously surrendered their parental rights. Respondent argues that (1) the trial court lacked jurisdiction over the termination proceedings due to flaws in the underlying neglect proceedings; and (2) the trial court's findings of parental unfitness were against the manifest weight of the evidence. We affirm.

I. FACTUAL BACKGROUND
In December 1997, the State filed separate petitions to adjudicate M.J. and A.J. neglected minors. Both petitions alleged, among other things, that the children were neglected because their environments were injurious to their welfare in that respondent had untreated mental health issues that placed her children at a risk of harm. An adjudicatory hearing was held in June 1998. Though respondent did not appear at the hearing, respondent's counsel was present and conducted cross-examination of the State's witnesses. After the hearing, the trial court entered orders adjudicating both children neglected minors pursuant to section 2-3(1) of the Juvenile Court Act of 1987 (705 ILCS 405/2-3(1) (West Supp.1997)). A dispositional hearing was held on July 1, 1998. Respondent failed to appear although she was notified earlier in open court of the date and time of the hearing.
At the dispositional hearing, the trial court ordered respondent, in absentia, to cooperate with the Department of Children and Family Services (DCFS), to follow through with recommended mental health counseling, and to refrain from threatening DCFS personnel during visits with the children. Visitation between respondent and the children was to be at the discretion of DCFS. The trial court then made the children wards of the court and appointed DCFS legal guardian and custodian of the minors. No appeal was taken from the dispositional order.
Late in January 1999, the State separately petitioned to terminate respondent's parental rights as to both children. The petitions alleged that respondent was an unfit parent because (1) she failed to maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare (750 ILCS 50/1(D)(b) (West 1998)); (2) she continuously or repeatedly neglected the children (750 ILCS 50/1(D)(d) (West 1998)); and (3) she failed to make reasonable efforts to correct the conditions that were the basis for the removal of the *793 children or to make reasonable progress toward the return of the children within nine months after the adjudication of neglect (750 ILCS 50/1(D)(m) (West 1998)). An "unfitness" hearing was conducted in June 1999 at which respondent was present and the following evidence was presented.
Linda Mase, a DCFS supervisor with a master's degree in clinical psychology, was respondent's caseworker from December 1997 through October 1998. She had previously been employed as a mental health specialist and crisis counselor. Mase testified that after respondent was arrested for disorderly conduct in December 1997, A.J. and M.J. were taken into protective custody. M.J. was placed in foster care and A.J. was initially placed with his natural father and then later placed with another relative. At the time of the hearing, M.J. was 3 years old and A.J. was 12 years old. According to Mase, at the time respondent was arrested she was living with the children in a homeless shelter. Yet Mase noted that the children appeared clean and well fed. Mase testified that she met with respondent in the Winnebago County jail to discuss services that might be needed in order to return the children home. According to Mase, respondent's thought process was difficult to follow. Respondent failed to stay focused on the conversation and jumped from one subject to the next.
As a result of the discussion, Mase recommended that respondent have a mental health assessment, to which respondent agreed. Mase prepared a written service plan with the goal to eventually return the children to respondent. The service plan provided for weekly supervised visitation and, in addition to obtaining the mental health assessment, recommended a drug and alcohol assessment because respondent admitted to prior drug use and tested positive for cocaine. The service plan additionally required that respondent follow all court orders, attend court dates, visit the children according to the visitation schedule, and locate suitable housing. Finally, the service plan required respondent to complete any services recommended pursuant to the mental health and drug and alcohol assessments. Mase's testimony, for the most part, was identical to that offered at the adjudicatory hearing.
According to Mase, respondent initially cooperated with the service plan. Respondent located suitable housing and attended all scheduled visitations. Respondent also obtained a mental health assessment. However, after only a few weeks, respondent stopped attending therapy and stopped taking her prescribed medication. Respondent never returned to therapy and never obtained a drug and alcohol assessment.
Mase testified that the case was subsequently transferred to Lutheran Social Services and the permanency goal was changed from returning the children home to "substitute care pending court decision." Mase testified that the goal was changed because respondent was making very little progress toward the goal of returning the children home. Specifically, Mase cited respondent's failure to follow through with the alcohol and drug assessment and her failure to follow through with her mental health therapy. Mase also noted that respondent was generally combative every time she had contact with DCFS or another agency.
Julie Melan, a child welfare specialist with Lutheran Social Services, testified that she had been respondent's caseworker from October 1998 through the time of the termination hearing. At the time Melan took over the case from DCFS, the goal was substitute care pending the termination of parental rights. According to Melan, at the time of the termination hearing respondent did not have a permanent address. Respondent told Melan that she could be reached at the Rescue Mission. Melan never formally discussed the objectives and goals set out in the service plans with respondent but respondent was given copies of each service plan. According to Melan, respondent was aware of the requirements set out in the service plan but *794 had failed to follow through on any of them except visitation with the children.
Melan further testified that she was concerned that the children's safety would be jeopardized if they were returned to respondent. Melan based her opinion on respondent's history of unstable relationships with men. Melan also noted that respondent said she heard voices and heard her baby cry out at night even though the baby was not living with her. Respondent also told Melan that a coffee table was possessed with the soul of her dead baby. Melan further noted that respondent did not have stable employment. According to Melan, the only services respondent participated in were the visitations with her children. Respondent never addressed her mental health and drug and alcohol problems with Melan while she was her caseworker.
After closing arguments, the trial court found that the State had presented clear and convincing evidence that respondent was an unfit parent. The trial court found that respondent failed to maintain a reasonable degree of interest, concern, or responsibility regarding the children's welfare in that she did not resolve her mental health and drug and alcohol issues and she failed to make reasonable progress or reasonable efforts toward the return of the children within nine months of the dispositional order. However, the trial court further found that the State failed to prove that the children were continuously or repeatedly neglected. The trial court determined after a best interest hearing that the termination of respondent's parental rights was in the children's best interest. Respondent failed to appear at the "best interest" hearing, and the report submitted indicated that she could not be found. This appeal followed.

II. ANALYSIS

A. Appellate Jurisdiction Over the Challenge to the Underlying Neglect Proceedings
Respondent's first argument is that the trial court lacked jurisdiction over the termination proceedings because the State failed to meet its burden of proof in the underlying neglect proceedings. The State responds that this court lacks jurisdiction to consider this argument because respondent failed to perfect an appeal after the original dispositional order was entered. We agree with the State and, for the following reasons, we dismiss that portion of respondent's appeal attacking the original neglect proceedings.
Initially, respondent appears to be arguing that, because the trial court made errors in the introduction of evidence at the adjudicatory hearing, it lacked jurisdiction to make a finding necessary to adjudicate the children neglected. Where a court fails to proceed within rules of evidence or the strictures of a statute, the court does not lose its constitutionally conferred subject matter jurisdiction. See In re C.S., Jr., 294 Ill.App.3d 780, 786, 229 Ill.Dec. 225, 691 N.E.2d 161 (1998). Rather, it proceeds in possible error subject to appellate review of its decisions. See C.S., 294 Ill.App.3d at 786, 229 Ill.Dec. 225, 691 N.E.2d 161.
Supreme Court Rule 660(b) provides that, except in delinquency cases, "[i]n all other proceedings under the Juvenile Court Act, appeals from final judgments shall be governed by the rules applicable to civil cases." 134 Ill.2d R. 660(b). To properly perfect an appeal in a civil case, a notice of appeal must be filed within 30 days after the entry of a final order (155 Ill.2d R. 303(a)), unless an extension of the 30-day limitation is granted pursuant to Supreme Court Rule 303(d) (155 Ill.2d R. 303(d)). Compliance with the rules governing the deadline for filing a notice of appeal is mandatory and jurisdictional. In re C.S., Jr., 294 Ill.App.3d at 787, 229 Ill.Dec. 225, 691 N.E.2d 161.
In general, subject to Supreme Court Rule 662(a) (134 Ill.2d R. 662(a)), an *795 adjudicatory order is not a final and appealable order. In re Smith, 80 Ill.App.3d 380, 381, 35 Ill.Dec. 635, 399 N.E.2d 701 (1980). Rather, in juvenile cases, the dispositional order generally is the final order from which an appeal properly lies. In re C.S., Jr., 294 Ill.App.3d at 787, 229 Ill.Dec. 225, 691 N.E.2d 161.
In this case, respondent never filed a notice of appeal from the trial court's dispositional order. Furthermore, the notice of appeal that respondent filed does not mention the dispositional order or any of the neglect proceedings. Therefore, appellate jurisdiction was never perfected with respect to the neglect proceedings. We dismiss that portion of this appeal challenging the findings at the neglect proceedings.

B. Findings of Parental Unfitness
We now turn to respondent's second contention. Respondent argues that the trial court's findings of parental unfitness were against the manifest weight of the evidence. For the following reasons, we disagree.
The Juvenile Court Act of 1987 provides a two-stage mechanism whereby parental rights may be involuntarily terminated. 705 ILCS 405/2-29(2)(West 1998). Under this bifurcated procedure there must be a threshold showing of parental unfitness based upon clear and convincing evidence and then a subsequent showing that the best interests of the child are served by severing parental rights. See In re Adoption of Syck, 138 Ill.2d 255, 277, 149 Ill.Dec. 710, 562 N.E.2d 174 (1990).
A trial court's determination of parental unfitness involves factual findings and credibility assessments that the trial court is in the best position to make. In re A.B., 308 Ill.App.3d 227, 240, 241 Ill. Dec. 487, 719 N.E.2d 348 (1999). We therefore defer to the trial court's factual findings, and we will not reverse the trial court unless the record shows that the factual findings are against the manifest weight of the evidence. In re A.B., 308 Ill.App.3d at 240, 241 Ill.Dec. 487, 719 N.E.2d 348. A factual finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or the determination is unreasonable, arbitrary, and not based on the evidence presented. Brazas v. Ramsey, 291 Ill.App.3d 104, 109, 224 Ill.Dec. 915, 682 N.E.2d 476 (1997).
Parental unfitness is determined with reference to section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 1996)). 705 ILCS 405/2-29(2)(West 1996). Because parents have superior rights against all others to raise their children (see In re T.D., 268 Ill.App.3d 239, 245, 205 Ill.Dec. 708, 643 N.E.2d 1315 (1994)), before a trial court can adjudicate a parent unfit and terminate his or her parental rights, the State must prove by clear and convincing evidence at least one statutory ground of parental unfitness. In re A.B., 308 Ill. App.3d at 240, 241 Ill.Dec. 487, 719 N.E.2d 348. This means that, on review, if there is sufficient evidence to satisfy any one statutory ground we need not consider other findings of parental unfitness. In re A.B., 308 Ill.App.3d at 240, 241 Ill.Dec. 487, 719 N.E.2d 348.
Section 1(D)(b) of the Adoption Act provides that a person may be declared an unfit parent for "[f]ailure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare." 750 ILCS 1(D)(b) (West 1998). In evaluating an allegation under section 1(D)(b), a trial court must focus on the reasonableness of the parent's efforts to show interest, concern, or responsibility and not necessarily on the success of those efforts. In re E.O., 311 Ill.App.3d 720, 726-27, 244 Ill.Dec. 165, 724 N.E.2d 1053 (2000). The trial court also must consider any circumstances that would have made it difficult for the respondent to show interest, concern, or responsibility for the well-being of the child. In re E.O., 311 Ill. App.3d at 727, 244 Ill.Dec. 165, 724 N.E.2d *796 1053. However, the supreme court has recently implied that a parent's failure to comply with the directives of a service plan, i.e., failure to make reasonable efforts or reasonable progress toward the return of the children, is analogous to a parent's failure to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the children. See In re D.L., 191 Ill.2d 1, 11-12, 245 Ill.Dec. 256, 727 N.E.2d 990 (2000). The only difference is that in determining reasonable efforts or reasonable progress the trial court must limit its findings to a specific time frame, whereas in determining the degree of interest, concern, or responsibility as to the welfare of the children no such time frame exists. See In re D.L., 191 Ill.2d at 24, 245 Ill.Dec. 256, 727 N.E.2d 990 (Freeman, J., specially concurring).
We believe, in this case, that the trial court's finding of parental unfitness based upon respondent's failure to maintain a reasonable degree of interest, concern, or responsibility concerning the children's welfare was not against the manifest weight of the evidence. The record shows that Linda Mase met with respondent in the Winnebago County jail to discuss services that were needed in order for the children to be returned home. Based on this discussion and on respondent's admitted drug use, a written service plan was prepared and given to respondent. The service plan required weekly supervised visitation and, in addition to obtaining a mental health assessment, required a drug and alcohol assessment. The service plan further required respondent to follow all court orders, attend court dates, and to locate suitable housing. Finally, the service plan required respondent to complete any services recommended pursuant to the mental health and drug and alcohol assessments.
While the record shows that respondent consistently attended scheduled visitations with her children, it also demonstrates a failure to comply with the remainder of the service plan despite her knowing that the compliance was necessary in order for her children to be returned home. Except for obtaining an initial mental health evaluation, attending a few counseling sessions, and briefly obtaining suitable housing, respondent failed to comply with the requirements of the service plan established by DCFS. Respondent never obtained a drug and alcohol assessment, did not follow the recommendations of her mental health counselor, and stopped taking her prescribed medication soon after obtaining the mental health assessment. Respondent also quit her job because her new boyfriend had to know where she was at all times, and respondent moved out of her apartment and back into a homeless shelter.
Based on these facts, the trial court found that respondent's failure to follow through with most of the requirements of the service plan demonstrated her lack of interest, concern, or responsibility toward her children. Respondent argues that simply because she consistently attended scheduled visitations with her children, her interest, concern, or responsibility toward her children was reasonable.
We disagree with respondent because a parent is not fit simply because she has demonstrated some interest in or affection for her children. In re E.O., 311 Ill.App.3d at 727, 244 Ill.Dec. 165, 724 N.E.2d 1053. The interest, concern, or responsibility must be objectively reasonable. In re E.O., 311 Ill.App.3d at 727, 244 Ill.Dec. 165, 724 N.E.2d 1053. Moreover, as we noted earlier, the failure to comply with the directives of a service plan with the stated goal of returning a child home is tantamount to objectively unreasonable interest, concern, or responsibility as to the child's welfare. See In re D.L., 191 Ill.2d at 11-12, 24, 245 Ill.Dec. 256, 727 N.E.2d 990.
We hold that consistent attendance at scheduled visitations alone does not demonstrate objectively reasonable interest, *797 concern, or responsibility as to the children's welfare where a parent otherwise fails to substantially comply with the other directives of the service plan in the face of knowing that substantial compliance is necessary in order to have children returned home. The trial court's finding under section 1(D)(b) was not against the manifest weight of the evidence. Having determined that there was sufficient evidence to satisfy one statutory ground, we need not address the other findings of parental unfitness by the trial court.

III. CONCLUSION
For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.
Affirmed.
BOWMAN, P.J., and GALASSO, J., concur.