Second Division
December 12, 2006

No. 1-06-0111

| | | |
|---|---|---|
| IN RE JANIRA T., a Minor, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee | ) | Cook County, |
| | ) | Illinois Child |
| | ) | Protective Division |
| (The People of the State of Illinois | ) | |
| | ) | |
| Petitioner-Appellee, | ) | No. 03 JA 01022 |
| | ) | |
| v. | ) | |
| | ) | |
| Luz M., | ) | Honorable |
| | ) | Kathleen M. Burke, |
| Respondent-Appellant). | ) | Judge Presiding |

MODIFIED UPON DENIAL OF REHEARING

JUSTICE HALL delivered the opinion of the court:

Respondent Luz M. appeals the judgment of the circuit court of Cook County terminating her parental rights to her minor daughter Janira T. Janira's natural father, Luis T., voluntarily relinquished his parental rights to her and is not a party to this appeal.

On appeal, respondent contends that: (1) the unfitness findings entered at the termination proceeding should be reversed because the State failed to provide sufficient evidence showing that Janira was abused or neglected in the adjudicatory hearing which was the predicate for the termination proceeding; (2) we should reverse the termination of her parental rights because the State failed to prove by clear and convincing evidence that she was an unfit parent; (3) the trial court erred in finding that

1-06-0111

the termination of her parental rights was in Janira's best interests; and (4) subsections (b), (c), and (m) of section 1(D) of the Adoption Act (Adoption Act) (750 ILCS 50/1(D)(b), (D)(c), (D)(m) (West 2002)), are unconstitutional in violation of her state and federal procedural due process rights because these subsections allow the termination of parental rights based on less than clear and convincing evidence.  For the reasons that follow, we affirm.

BACKGROUND

Prior to Janira's birth (born October 15, 1996), respondent gave birth to six other children, Melissa M. (born June 28, 1983), Melinda M. (born January 13, 1986), Alberto M. (born September 11, 1987), Angel M. (born March 20, 1990), Luis (born December 26, 1991), and Jasmine T. (born November 20, 1994).

Luis T. is the natural father of Luis, Jasmine, and Janira. The other four children were fathered by Heriberto Q, who, like Luis T., is not a party to this appeal.

In February 1996, respondent came to the attention of the Illinois Department of Children and Family Services (DCFS) when Alberto reported to his teacher that his two older sisters, Melissa and Melinda, had been sexually abused by their stepfather, Luis T.  As a result, Janira's six older siblings were taken into protective custody and thereafter adjudicated abused based on a substantial risk of physical injury and neglected based on exposure to an injurious environment.

-2-

1-06-0111

On October 15, 1996, respondent gave birth to Janira. She was not immediately removed from respondent's care as she was not considered at risk of harm since respondent had reportedly separated from Luis T. after the allegations of abuse and neglect were made. Janira was, however, monitored monthly by announced and unannounced home visits by a caseworker.

On June 23, 1997, the trial court ruled that the State had proven, by a preponderance of the evidence, that Luis T. sexually abused Melissa and Melinda, that Alberto was the victim of excessive corporal punishment administered by Luis T., and that the siblings had been exposed to domestic violence on their mother administered by Luis T. On September 11, 1997, the trial court issued an order of protection requiring that any contact between Luis T. and the six siblings be supervised by DCFS and approved by the subject child.

Luis T. was later suspected of having seen the children during their unsupervised visits with respondent in 1999 and 2000. As a result, respondent's unsupervised contact with her six children was revoked in November 2000. Janira remained in respondent's care.

Pursuant to an adult-sex-offender risk evaluation of Luis T., dated April 3, 2003, it was determined, among other things, that he should not be given custody of any of his three biological children and should not be allowed unsupervised contact with them. On June 18, 2003, respondent and Luis T. were

"indicated" for risk of harm to Janira after a caseworker called the DCFS hotline and reported that respondent and respondent's mother were allowing Janira to have unsupervised contact with Luis T. As a result, on June 23, 2003, Janira was placed with a maternal great-aunt under a safety plan.

On July 17, 2003, the State filed a petition for adjudication of wardship on behalf of Janira. The petition charged her parents with neglect based on exposure to an injurious environment and abuse based on a substantial risk of physical injury. At the conclusion of a temporary custody hearing on August 6, 2003, the trial court granted temporary custody of Janira to the DCFS guardianship administrator. Respondent was not present at the hearing, and the order was entered without prejudice to her.

On August 21, 2003, the trial court held a second temporary custody hearing regarding Janira, at which respondent was present and represented by the office of the public defender. At the conclusion of the hearing, the trial court maintained temporary custody of Janira with DCFS.

On January 13, 2004, the trial court held an adjudicatory hearing. Following the hearing, the trial court entered an order finding that, based on the preponderance of the evidence, Janira was neglected due to an injurious environment and abused due to a substantial risk of physical injury in that the parents were aware that father was not to have unsupervised contact with

-4-

Janira yet such contact occurred; father was a sexual perpetrator; and mother had extensive history with DCFS.

On February 23, 2004, the trial court conducted the dispositional hearing. At the conclusion of the hearing, the court determined it was in Janira's best interest to be made a ward of the court and appointed D. Jean Ortega-Piron, the DCFS Guardianship Administrator, as her guardian with the right to place her. The disposition was based on the trial court's findings that respondent was unable, unwilling, and unfit to care for Janira and that Luis T. was unable and unwilling to care for her. Respondent did not appeal the adjudication order nor the dispositional order.

On April 19, 2004, the trial court entered a permanency order finding that respondent had not made substantial progress towards returning Janira home. The order set a permanency goal for Janira of return home pending a status hearing because respondent expressed a willingness to complete the services required for reunification with her minor daughter.

On October 15, 2004, the trial court entered a permanency order again finding that respondent had not made substantial progress towards returning Janira home. The order set a permanency goal of substitute care pending court determination on termination of parental rights. The order stated this goal was selected because Janira was eight years old, she was living with a nonrelative in a preadoptive home, and her natural parents had

1-06-0111

not made substantial progress toward reunification and were not visiting consistently.

On February 2, 2005, the State filed a supplemental petition pursuant to section 2-29(2) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-29(2) (West 2000)), seeking the termination of the parental rights of respondent and Luis T. to Janira and the appointment of a guardian with the right to consent to her adoption. The supplemental petition contained three counts of unfitness with respect to respondent: (1) failure to maintain a reasonable degree of interest, concern or responsibility as to Janira's welfare as set forth in section 1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b) (West 2002)); (2) desertion of Janira for more than three months next preceding the commencement of these termination proceedings as set forth in section 1(D)(c) of the Adoption Act; and (3) failure to make reasonable efforts to correct the conditions that led to Janira's removal from the home, and/or failure to make reasonable progress toward the return of the child within nine months of an adjudication of abuse or neglect as set forth in section 1(D)(m) of the Adoption Act.

On June 29, 2005, Luis T. appeared in trial court and gave his final and irrevocable consent to Janira's adoption by her foster parent.

The fitness and best interests portions of the bifurcated

termination proceeding[1] were both held on December 5, 2005.
Prior to commencement of the fitness hearing, the trial court
took judicial notice of the following orders: (1) the August 21,
2003, paternity order in which Luis T. was found to be Janira's
father; (2) the adjudication order entered January 13, 2004, in
which Janira was found to be neglected and abused; (3) the
dispositional order entered February 23, 2004, in which Janira
was made a ward of the court and respondent was found unable,
unwilling, and unfit to care for her.  The trial court later took
judicial notice that the State filed its supplemental termination
petition on February 2, 2005.

The State called two witnesses at the fitness hearing,
Lauren Barker, a caseworker at Casa Central, and Eloisa Rosales,
a former caseworker at the same agency.

Barker testified she was assigned to Janira's case from
February 2004 to July 2004.  At the time she received the case,
it was already in the system.  The case had come into the system
for failure to protect based upon allegations that respondent
allowed Janira to have unsupervised contact with Luis T. even

---

[1] During the first stage, the trial court considers whether
a respondent is unfit within the meaning of section 1(D) of the
Adoption Act (750 ILCS 50/1(D) (West 2002)); at the second stage,
the court determines whether termination of parental rights would
be in the minor's best interests. See, *e.g.*, *In re G.L.*, 329 Ill.
App. 3d 18, 20-24, 768 N.E.2d 367 (2002).

though he was accused of sexually abusing her sisters.

After an assessment, it was determined that respondent needed to complete various recommended services in order to be reunited with Janira. She needed to take parenting classes to assess her parenting skills due to her history of involvement with DCFS. She needed to engage in individual therapy to address issues that originally brought the case into the system, such as issues of permanency, allegations of sexual abuse, and issues of domestic violence. She was also required to have a drug and alcohol assessment.

Barker testified that during the approximate five-month period she had the case, respondent did not complete any of the recommended services offered her. In regard to visitation, respondent was allowed weekly, one-hour supervised visits with Janira at Casa Central. Barker testified that respondent initially visited Janira consistently, but later there was "a large period of time" where respondent stopped visiting. Barker testified that overall, respondent attended less than 50% of the visits she was allowed to have with Janira and when she did visit, the visits were unorganized and lacked structure, where Janira was allowed to "run wild" while respondent talked with the maternal grandmother. Barker stated that during the visits, respondent never spoke to Janira about school and there was no real discipline or instruction. Barker observed a bond between Janira and respondent but did not believe respondent could

properly parent or discipline her daughter.

In a service plan dated August 1, 2004, covering and evaluating the preceding six-month period, Barker rated respondent's overall performance as "unsatisfactory" based on respondent's failure to comply with recommended services and her inconsistent and inadequate visitation with Janira.

On cross-examination, Barker testified that respondent never told her why she missed visitation and never indicated that illness was the reason she did not comply with recommended services. Barker stated that if respondent had given advanced notice that she would not be keeping a visitation appointment, the missed visit could have been rescheduled or the subsequent visit extended. Barker also testified that if respondent had stated that illness prevented her from complying with recommended services, one of the services could have been "taken out" or respondent could have been given a different six-month time period within which to complete the services.

Rosales testified she was assigned to Janira's case from August 2004 to June 2005. At the time she received the case, recommended services offered respondent were still outstanding. Rosales testified that during the entire time she was on the case, respondent never completed any of the offered services or substance abuse assessments.

Rosales personally met respondent for the first time on a visitation day at Casa Central. She briefly spoke to respondent

about uncompleted services and asked to schedule a meeting to be held on a nonvisitation day so they could further discuss needed services in more detail. Rosales also sent respondent two letters urging her to meet to discuss uncompleted services. Rosales testified that the meeting never occurred because it was difficult to get in telephone contact with respondent since she did not have a telephone. Rosales never referred respondent to any services or assessments because they were never able to meet and discuss scheduling.

On October 15, 2004, shortly after Rosales received the case, the permanency goal for Janira was changed from return home, to substitute care pending termination of parental rights. Rosales testified that once the goal changed, Casa Central was no longer required to provide or pay for services for respondent, and the visiting schedule changed from once a week to once a month. Rosales provided respondent with a list of agencies where she could receive free services but respondent never engaged in the services.

In regard to visitation, Rosales testified that before the permanency goal for Janira was changed, respondent only visited her about twice a month even though she was allowed to visit once a week. Rosales testified that when respondent visited Janira, the visits were unstructured and the minor was left to do whatever she wanted. According to Rosales, Janira was all over the place jumping on couches, yelling and not using her indoor

voice.  Rosales stated that respondent had difficulty redirecting Janira.

Rosales testified that although respondent explained that her inconsistent visitation resulted from medical problems, she never provided any documentation to support this claim.  Rosales further testified there were a number of times respondent called to confirm a visit and then failed to show up.  Shortly after the permanency goal for Janira changed, respondent stopped visiting and would only inquire as to how the child was doing.

In a service plan dated February 1, 2005, covering and evaluating the preceding six-month period, Rosales rated respondent's overall performance as "unsatisfactory" based on her failure to comply with recommended services.

After hearing closing arguments, the trial court found respondent unfit under subsections (b), (c), and (m) of section 1(D) of the Adoption Act (750 ILCS 50/1(D)(b), (D)(c), (D)(m) (West 2002)).  The trial court then proceeded immediately to the best interests portion of the termination proceeding.

Gloria Vasquez, a caseworker at Casa Central, was the only witness who testified at the best interests hearing.  She was Janira's current caseworker having been assigned her case October 17, 2005.  She gave testimony regarding Janira's foster home placement, her relationship with her foster mother, and her developmental progress.  Janira was placed with her current foster mother in August 2003.

Since receiving the case, Vasquez testified that she visited the foster home twice to see Janira, with the most recent visit occurring just four days prior to the present hearing. Vasquez described the foster home as a safe, clean, well-kept, three-bedroom apartment. Janira and her foster mother lived in the home, along with a dog and two cats. Janira had her own bedroom. Vasquez found no signs of abuse, neglect, or corporal punishment.

Vasquez observed that Janira and her foster mother were bonded and described their interaction as "very positive." Janira seemed happy and appeared to love her foster mother, whom she called "mom." When Vasquez visited the foster home, Janira excitedly told her about the activities she and her foster mother engaged in such as going on trips and to the movies. Janira also had established ties to the community where she befriended a number of her neighbors.

The foster mother tutors Janira and enrolled her in private school. Janira performed so well on the entrance exam she was skipped to the third grade. She was also taking after-school music classes.

Vasquez testified that Janira had no special needs but was participating in individual therapy to deal with issues relating to separation from her natural parents, the death of her brother, and adjusting to her foster home. These therapy sessions took place in the foster home.

Vasquez testified that the foster mother wished to adopt

Janira and, in turn, Janira, who was eight years old at the time, wanted to be adopted. The foster mother stated that if she were allowed to adopt Janira, she would continue to allow sibling visits.

Vasquez believed it was in Janira's best interests that the parental rights of her parents be terminated and that D. Jean Ortega-Piron be appointed her guardian with the right to consent to her adoption. Vasquez testified her belief was based on the close bond Janira developed with her foster mother, the observation that Janira was doing extremely well in the foster home, and her success in school.

Following closing arguments, the trial court determined that Janira's best interest would be served by terminating respondent's parental rights and appointing D. Jean Ortega-Piron as Janira's guardian with the authority to consent to her adoption. Respondent now appeals.

ANALYSIS

Respondent first contends that the unfitness findings entered at the termination proceeding should be reversed because the State failed to provide sufficient evidence showing that Janira was abused or neglected in the prior adjudicatory hearing conducted on January 13, 2004, which was the predicate for the termination proceeding. The State and public guardian maintain that we lack jurisdiction to review this issue because respondent failed to appeal the adjudicatory order within 30 days of the

entry of the subsequent dispositional order.  We agree with the
State and public guardian.

Supreme Court Rule 660(b) provides that, except in cases of
juvenile delinquency, appeals from final judgments under the
Juvenile Court Act are governed by the rules applicable to civil
cases. 134 Ill. 2d R. 660(b); see also *In re M.J.*, 314 Ill. App.
3d 649, 654, 732 N.E.2d 790 (2000); *In re Lee*, 73 Ill. App. 3d
449, 449-50, 392 N.E.2d 304 (1979).  To properly perfect an
appeal in a civil case, the notice of appeal must be filed within
30 days after entry of the final order (155 Ill. 2d R. 303(a)),
unless an extension of the 30-day time limit is granted under
Supreme Court Rule 303(d) (155 Ill. 2d R. 303(d)). *In re M.J.*,
314 Ill. App. 3d at 654; see also *In re Wheat*, 68 Ill. App. 3d
471, 477-78, 386 N.E.2d 278 (1979) (appellate jurisdiction is
generally dependent upon the timely filing of a notice of appeal
after the entry of a final judgment).

In juvenile cases, subject to Supreme Court Rule 662(a) (134
Ill. 2d R. 662(a))[2], an adjudicatory order is generally not
considered a final appealable order. *In re M.J.*, 314 Ill. App. 3d

---

[2] Where a dispositional order is not entered within 90 days
of an adjudication of wardship, an appeal may be taken from the
adjudicatory order. 134 Ill. 2d R. 662(a).  In such a case, the
notice of appeal must be filed within 30 days after expiration of
the 90 days. 134 Ill. 2d R. 662(c); *In re Smith*, 80 Ill. App. 3d
380, 381, 399 N.E.2d 701 (1980).

at 654-55; *In re Lee*, 73 Ill. App. 3d at 450. Rather, it is the dispositional order from which an appeal properly lies. *In re Smith*, 80 Ill. App. 3d 380, 381, 399 N.E.2d 701 (1980).

In this case, respondent never filed a notice of appeal from either the trial court's adjudicatory order or its dispositional order. We therefore lack appellate jurisdiction over respondent's appeal of the trial court's January 13, 2004, adjudicatory order and dismiss that portion of the appeal.

Respondent next contends that we should reverse the termination of her parental rights because the State failed to prove by clear and convincing evidence that she was an unfit parent. We disagree.

To terminate the parental rights of a nonconsenting parent, an adjudication of unfitness is first required. See *In re Chilean*, 304 Ill. App. 3d 580, 583, 710 N.E.2d 24 (1999). The grounds that will support a finding of unfitness are set out in section 1(D) of the Adoption Act. 750 ILCS 50/1(D) (West 2002). Although section 1(D) sets out various grounds under which a parent may be deemed unfit, an unfitness finding may be entered if there is sufficient evidence to satisfy any one statutory ground. *In re Donald*, 221 Ill. 2d 234, 244, 850 N.E.2d 172 (2006).

As previously mentioned, the trial court in this case found respondent unfit under subsections (b), (c), and (m) of section 1(D) of the Adoption Act (750 ILCS 50/1(D)(b), (D)(c), (D)(m)

(West 2002)). The trial court discussed respondent's failure to complete recommended services, her inconsistent visitation, and her subsequent cessation of visitation after October 2004.

A finding of parental unfitness must be supported by clear and convincing evidence. *In re Katrina*, 364 Ill. App. 3d 834, 842, 847 N.E.2d 586 (2006). A trial court's determination that clear and convincing evidence of a parent's unfitness has been shown will not be disturbed on review unless its against the manifest weight of the evidence. *In re D.D.*, 196 Ill. 2d 405, 417, 752 N.E.2d 1112 (2001).

The first ground that the trial court found in favor of the State was subsection (b) of the Adoption Act. This subsection provides that a person may be declared an unfit parent for "[f]ailure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare." 750 ILCS 50/1(D)(b) (West 2002). We believe the trial court's finding of parental unfitness based upon subsection (b) was not against the manifest weight of the evidence.

The record shows that shortly after Janira was removed from respondent's care on August 6, 2003, respondent was assessed for needed services and it was determined she was in need of parenting classes, individual therapy, and a drug and alcohol assessment. Caseworker Barker testified at the fitness hearing that during the approximate five-month period she had the case, from February 2004 to July 2004, respondent did not complete any

of the recommended services offered her.

Caseworker Rosales testified at the fitness hearing that she was assigned the case from August 2004 to June 2005. At the time Rosales received the case, recommended services were still outstanding. Rosales testified that during the entire time she was on the case, respondent never completed any of the offered services or substance abuse assessments.

In regard to visitation, Barker testified that respondent initially visited Janira consistently but later there was "a large period of time" where respondent stopped visiting. Barker testified that respondent attended less than half the visits she was allowed to have with Janira and when she did visit, the visits were unorganized and lacked structure.

Rosales testified that before the permanency goal for Janira was changed from return home to substitute care pending termination of parental rights, respondent only visited about twice a month, even though she was allowed weekly visits. Rosales stated there were a few times she brought Janira to the agency for a visit with respondent and respondent failed to show up. Rosales testified that when respondent did visit, the visits were unstructured and that Janira was basically left on her own. Shortly after the permanency goal for Janira changed, respondent stopped visiting.

Our courts have determined that noncompliance with an imposed service plan and infrequent or irregular visitation is

1-06-0111

sufficient evidence warranting a finding of unfitness under subsection (b) of the Adoption Act. See *In re Jaron*, 348 Ill. App. 3d 239, 259, 810 N.E.2d 108 (2004) (and cases cited therein).  Respondent argues that her efforts should be reviewed in the context of her medical problems, the death of her child, and the agency's half-hearted attempt to work with her.

Respondent, however, never produced any documentation showing that her claimed medical problems were the reason she failed to complete required services or consistently visit Janira.  During one court date, the trial judge informed respondent's attorney that respondent needed to bring documentation of her doctor's visits to the next court date. Respondent failed to come to court on the subsequent court date and no such documentation appears in the record.

The record also shows that respondent's oldest child actually died approximately six years prior to the date the fitness hearing was held and that even after her child Luis was diagnosed with cancer in January 2005, respondent did not visit him consistently.  The reasons respondent gives for failing to comply with required services or consistently visit Janira are not supported by the record.  Respondent's continued refusal to comply with required services and her repeated failure to maintain regular visitation sufficiently demonstrate that, even within the context of her alleged circumstances, she has not maintained a reasonable degree of interest, concern or

1-06-0111

responsibility toward Janira's welfare.

The trial court's finding that respondent was unfit under subsection (b) of the Adoption Act was not against the manifest weight of the evidence. Having determined there was sufficient evidence to satisfy one statutory ground, we need not address the other findings of unfitness made by the trial court. See *In re M.J.*, 314 Ill. App. 3d 649, 657, 732 N.E.2d 790 (2000); *In re Shanna*, 343 Ill. App. 3d 1155, 1168, 799 N.E.2d 843 (2003).

Respondent next contends the trial court erred in finding that the termination of her parental rights was in Janira's best interests. Respondent maintains the trial court made its finding without fully considering the statutory "best interests" factors. Respondent also contends the trial court made its finding without considering what she might have to offer Janira and that the court discounted the importance of the child's siblings, instead focusing on the advantages of the foster home. We disagree.

Once a trial court finds a parent unfit, the court must then determine whether termination of parental rights is in the best interests of the child. *In re D.T.*, 212 Ill. 2d 347, 352, 818 N.E.2d 1214 (2004); *In re J.T.C.*, 273 Ill. App. 3d 193, 199, 652 N.E.2d 421 (1995). In making this determination, the court is required to consider factors such as the child's physical safety and welfare; the child's background and ties, including familial, cultural, and religious; the child's need for permanence, including her need for stability and continuity with parental

-19-

figures and other relatives; the risks related to substitute care; and the preferences of the person available to care for the child. 705 ILCS 405/1-3(4.05) (West 2004).  In rendering its decision, the trial court is not required to explicitly mention, word-for-word, the factors listed in section 1-3(4.05) of the Juvenile Court Act. *In re Jaron*, 348 Ill. App. 3d at 262-63.

The State bears the burden of proving by a preponderance of the evidence that termination is in the child's best interests. *In re Katrina*, 364 Ill. App. 3d at 845.  The trial court's finding that termination is in the child's best interest will not be disturbed unless it is against the manifest weight of the evidence or the court abused its discretion. *In re G.L.*, 329 Ill. App. 3d 18, 25, 768 N.E.2d 367 (2002).

A review of the evidence in relation to the statutory factors shows that the trial court's decision to terminate respondent's parental rights as to Janira was not contrary to the manifest weight of the evidence or an abuse of discretion. Evidence presented at the best interest hearing revealed that Janira was happy in a stable, appropriate, safe home and had bonded with her foster mother, whom she called "mom" and who wished to adopt her.  Janira also wished to be adopted by her foster mother.  Janira had been living with her foster mother for over two years, during which time she received educational tutoring and skipped a grade.  She also takes after-school music lessons.

Janira has established ties to the community and has befriended a number of her neighbors. She participates in individual therapy to cope with issues relating to the separation from her parents, the death of her brother, and adjusting to her foster home. In addition, the foster mother stated that if she were allowed to adopt Janira, she would continue to allow sibling visits. This evidence supports the trial court's finding that it was in Janira's best interests to terminate respondent's parental rights.

Respondent finally contends that subsections (b), (c), and (m) of section 1(D) of the Adoption Act are unconstitutional in violation of her state and federal procedural due process rights because these subsections allow the termination of parental rights based on less than clear and convincing evidence. Respondent maintains that a finding of parental abuse and neglect necessary for a subsequent finding of unfitness under subsections (b), (c), and (m) need only be proven by a preponderance of the evidence and therefore these subsections are unconstitutional because they do not require such underlying findings of abuse and neglect be proven by clear and convincing evidence. We disagree.

Although respondent failed to raise this due process argument at the hearings to terminate her parental rights, we elect to address it because of its constitutional nature. See *In re S.F.*, 359 Ill. App. 3d 63, 65, 834 N.E.2d 453 (2005). The United States Supreme Court has determined that, due to the

-21-

1-06-0111

importance of the parental relationship, the decision to terminate parental rights must be supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982); *In re Adoption of Syck*, 138 Ill. 2d 255, 276, 562 N.E.2d 174 (1990). Respondent urges us to adopt the same higher standard of proof for abuse and neglect hearings. We must decline respondent's request.

In *Santosky,* the Court stated that the test to determine what process is constitutionally due in a proceeding to terminate parental rights involves the balancing of three factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903 (1976), the privacy interests affected by the proceeding; the risk of error created by the state's chosen procedure; and the governmental interests supporting the use of the challenged procedure. *Santosky*, 455 U.S. at 754, 71 L. Ed. 2d at 607, 102 S. Ct. at 1395.

Our courts, after considering and weighing each of these three factors, have concluded that a natural parent's due process rights are not violated where the grounds for termination of parental rights are established by clear and convincing evidence and the underlying abuse and neglect determinations are established by a preponderance of the evidence. See *In re S.A.*, 296 Ill. App. 3d 1029, 1033-35, 696 N.E.2d 368 (1998); see also *In re Jamarqon*, 338 Ill. App. 3d 639, 646, 788 N.E.2d 344 (2003).

In regard to the first factor, the private interests at

-22-

stake are the interest of a parent in the care, custody and management of her child and on the other hand the child's interest in a loving, stable and safe home environment. *In re Travarius*, 343 Ill. App. 3d 844, 851, 799 N.E.2d 510 (2003). At the adjudicatory stage, however, the parent's interest in maintaining the parent-child relationship yields to the child's interest in a stable, loving home life, since at this stage, the trial court focuses solely upon whether the child has been neglected or abused and not on whether the parents were neglectful or abusive. See *In re K.T.*, 361 Ill. App. 3d 187, 201, 836 N.E.2d 769 (2005); *In re Christina*, 333 Ill. App. 3d 1030, 1034, 777 N.E.2d 655 (2002) ("purpose of an adjudicatory hearing is to determine whether the child has been neglected, not to determine the status of the parent").

In addition, an underlying finding of abuse or neglect does not affect the parental relationship to the same constitutionally significant degree as a termination proceeding because under section 1(D) of the Adoption Act, a parent cannot have his or her parental rights terminated based solely upon a finding of neglect or abuse. See *In re Jamarqon*, 338 Ill. App. 3d at 649. The parental rights of a nonconsenting parent may be terminated only upon a finding of unfitness and such finding must be supported by clear and convincing evidence. *In re J.P.*, 261 Ill. App. 3d 165, 174, 633 N.E.2d 27 (1994). The first factor weighs against respondent.

1-06-0111

Under the second *Mathews* factor, we examine the extent to which the preponderance of the evidence standard creates a risk of an erroneous deprivation of parental rights and the likelihood that a higher evidentiary standard would reduce that risk.  The risk of error in question is the risk of erroneous fact finding.  *Santosky*, 455 U.S. at 755, 71 L. Ed. 2d at 607-08, 102 S. Ct. at 1399.

The risk of error at issue here is the risk that underlying facts of central importance to a termination proceeding will be incorrectly determined at an abuse and neglect adjudication under a preponderance standard.  We find this risk is minimal at most because the statutes require the State to prove by clear and convincing evidence that the parent is unfit before terminating his or her parental rights.  Imposing an additional requirement that the underlying adjudication of abuse or neglect be supported by clear and convincing evidence is not necessary to protect the private interests at stake.  Due process does not require that the underlying abuse or neglect adjudication be supported by clear and convincing evidence.  The second factor weighs against respondent.

The third and final factor to be weighed is the governmental interests supporting the use of a preponderance of the evidence standard at an adjudicatory hearing.  This factor also weighs against respondent's position.

A primary purpose of the Juvenile Court Act is to preserve

1-06-0111

and strengthen the minor's family ties whenever possible. *In re Polovchak*, 104 Ill. App. 3d 203, 209, 432 N.E.2d 873 (1981). In dependency and neglect proceedings, both the State's Attorney and trial court are charged with the duty of ensuring that at each step of the wardship adjudication process the best interests of the minor, the minor's family, and the community are served. *In re A.F.*, 234 Ill. App. 3d 1010, 1014, 602 N.E.2d 480 (1991). Permitting the State to establish findings of abuse and neglect under a preponderance standard advances the State's *parens patriae* interest in protecting the welfare of its children and preserving family ties by providing the State with the jurisdictional bases and necessary flexibility to provide social services and dispositional remedies that help families address the root causes of dependency and neglect. See *In re Arthur*, 212 Ill. 2d 441, 464, 819 N.E.2d 734 (2004) ("A finding of abuse, neglect or dependency is jurisdictional, '" without [which] the trial court lacks jurisdiction to proceed to an adjudication of wardship'").

Heightening the standard of proof for abuse and neglect proceedings could make it more difficult for the State to protect its children and could lessen the ability of courts and the State to fashion workable solutions to preserve family ties. See *In re S.A.*, 296 Ill. App. 3d at 1034. Preponderance of the evidence is the appropriate standard of proof to be applied in abuse and neglect proceedings under the Juvenile Court Act.

Based on the foregoing analysis of the *Mathews* factors, we conclude that due process does not require the imposition of a clear and convincing standard of proof in an abuse or neglect adjudication. Under the preponderance standard, respondent's fundamental right to the care, custody and management of her child receives full protection, the risk of error in fact finding is insignificant, and the substantial governmental interest in intervening to provide necessary remedial assistance is promoted. See *In re A.M.D.*, 648 P.2d at 640-41.

Accordingly, for the reasons set forth above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

WOLFSON, P.J., and SOUTH, J., concur.