NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 190570-U

NO. 4-19-0570

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 13, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* A.B., a Minor, | ) | Appeal from |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Champaign County |
| Petitioner-Appellee, | ) | No. 17JA71 |
| v. | ) | |
| Sarah W., | ) | Honorable |
| Respondent-Appellant). | ) | John R. Kennedy, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*:    The appellate court affirmed, granting appellate counsel's motion to withdraw
pursuant to *Anders v. California*, 386 U.S. 738 (1967), in the absence of
meritorious issues to raise on appeal.

¶ 2     In June 2019, the trial court found respondent mother, Sarah W., an unfit parent to

her child, A.B. (born September 9, 2016).  In July 2019, the court found termination of

respondent's parental rights would be in the minor's best interest.  Respondent father is not a

party to this appeal.  On appeal, respondent argues the trial court's judgment terminating her

parental rights was against the manifest weight of the evidence.

¶ 3     Pursuant to *Anders v. California*, 386 U.S. 738 (1967), respondent's appellate

attorney moves to withdraw as counsel.  See *In re S.M.*, 314 Ill. App. 3d 682, 685-86, 732

N.E.2d 140, 143 (2000) (holding *Anders* applies to termination of parental rights cases and

providing the proper procedure to be followed by appellate counsel).  Counsel states he read the

record in this case. According to counsel, after his review, he concluded this case presents no viable grounds for an appeal and any appeal would be "frivolous." He supported his motion with a brief containing potential issues and argument as to why the issues lack merit. Counsel mailed respondent a copy of his motion and brief. After examining the record and executing our duties consistent with *Anders*, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 4                                         I. BACKGROUND

¶ 5                                      A. Initial Proceedings

¶ 6              The allegations of neglect—laid out in a shelter-care report—stemmed from a October 12, 2017, report to the Department of Children and Family Services (DCFS) that respondent "was leaving the children alone at night and that the children were asking people in the neighborhood for food because there was none in the home. The home was reported to be dirty including garbage and cat feces. [Respondent] was also reportedly 'snorting crushed pills.' " A DCFS investigation failed to find the allegations founded. However, respondent tested positive for "benzoids, opiates, methamphetamine, and marijuana." The three older children were placed in substitute care after previously being taken into care in Champaign County case No. 17-JA-20. DCFS placed A.B. in the home of her paternal aunt, with whom respondent father lived. After a report to DCFS involving a domestic incident between respondent father and his girlfriend in A.B.'s presence, on December 21, 2017, DCFS placed A.B. in protective custody.

¶ 7              On December 22, 2017, the State filed an amended petition for adjudication of neglect and shelter care against respondent. The petition alleged A.B.'s environment was injurious to her welfare pursuant to 705 ILCS 405/2-3(1)(b) (West 2016), where (1) respondent

exposed her to substance abuse, (2) respondent failed to correct the conditions which resulted in a prior adjudication of parental unfitness as to A.B.'s three siblings, and (3) respondent father exposed her to domestic violence.

¶ 8    At the shelter care hearing on December 22, 2017, the trial court found probable cause to believe A.B. was neglected where "[respondent] was using illegal substances and DCFS began a safety plan placing [A.B.] with [respondent father].  [Respondent father] moved [A.B.] out of the home DCFS had approved after its occupants passed background checks, without notifying DCFS, moving her to a home whose occupants had significant criminal records, including arrests for drugs and weapons.  He did not maintain contact with [DCFS] so its investigator could check [A.B.]'s welfare as often as the safety plan required, and then exposed [A.B.] to an incident of domestic violence between him and his girlfriend."  The court awarded DCFS temporary custody of A.B.

¶ 9    At a February 27, 2018, adjudicatory hearing, respondent stipulated to the shelter-care report.  The trial court took judicial notice of respondent's prior DCFS case (Champaign County case No. 17-JA-20).  Subsequently, the court entered an adjudicatory order finding A.B. neglected.  In a March 29, 2018, dispositional order, the court (1) found respondent unfit, (2) made A.B. a ward of the court, and (3) granted DCFS guardianship and custody.

¶ 10                    B. Termination Proceedings

¶ 11    In January 2019, the State filed a motion for termination of respondent's parental rights.  The State alleged respondent was an unfit parent because she failed (1) to make reasonable progress toward the return of A.B. during any nine-month period following the adjudication of neglect, specifically, April 1, 2018, to January 1, 2019 (750 ILCS 50/1 (D)(m)(ii)

(West 2016)), and (2) to maintain a reasonable degree of interest, concern, or responsibility as to A.B.'s welfare (750 ILCS 50/1 (D)(b) (West 2016)).

¶ 12                                    1. *Fitness Hearing*

¶ 13        On May 17, 2019, the trial court conducted a bifurcated hearing on the motion for termination of parental rights, first considering respondent's fitness.  Respondent failed to attend the fitness hearing but was represented by counsel.  The parties presented the following relevant testimony.

¶ 14                                    a. Rachel Kramer

¶ 15        Rachel Kramer, program director for Lutheran Social Services of Illinois (LSSI), testified she supervised the caseworkers on A.B.'s case and served as a caseworker on the case from the end of July to the middle of August 2018.  In April 2018, LSSI referred respondent for substance abuse and individual therapy services.  Kramer testified during her time as caseworker, she never received contact information for respondent and never contacted respondent.  Kramer also testified respondent never completed any services, including never visiting A.B.

¶ 16                                    b. Jaimee Roy

¶ 17        Jaimee Roy, a foster care caseworker with LSSI from February 2018 to May 2018, testified she worked on A.B.'s case from April 3, 2018, until May 21, 2018.  Roy contacted respondent on May 1, 2018, and scheduled a substance-abuse screen for respondent to be completed the next day, May 2, 2018.  After completing the substance-abuse screen where LSSI asked respondent questions regarding her substance abuse, LSSI referred respondent to Prairie Center and told respondent to make an appointment.  Roy testified respondent never provided results of a substance-abuse assessment.

¶ 18 Roy testified she spoke once more with respondent to confirm a visit with A.B. At that time, respondent had one hour of supervised visitation per week. Roy testified respondent attended one visit with A.B. during her time on the case. Roy never increased respondent's visitation schedule because respondent spent time in jail and Roy frequently could not reach respondent.

¶ 19                      c. Meredith Brumfield

¶ 20 Meredith Brumfield, a child welfare specialist with LSSI, testified she worked on A.B.'s case from August 13, 2018, until May 10, 2019. Brumfield testified she had no contact information for respondent and performed diligent searches for respondent, but any paperwork mailed to potential addresses was returned undeliverable. On September 11, 2018, respondent called Brumfield and they scheduled a visit with respondent's three older children for September 18; respondent did not ask about A.B. At that time, respondent gave Brumfield a contact number of a friend where Brumfield could reach her. On September 13, respondent called Brumfield and asked to reschedule the visit with her older children to September 25. After the conversation on September 13, Brumfield had no contact with respondent until December because the phone number provided by respondent no longer worked.

¶ 21 In December 2018, respondent called Brumfield and informed her she was living in Kankakee, Illinois. Respondent requested in-patient care but Kankakee did not have any in-patient care facilities. Respondent again provided Brumfield with a friend's phone number to reach her. Respondent would not provide Brumfield with an address because she feared LSSI would call the police. Brumfield testified that was the last time she spoke with respondent. Brumfield tried calling respondent the next week but could not reach her. Brumfield later learned respondent moved to Springfield, Illinois.

¶ 22 Brumfield testified when she spoke with respondent in December, she encouraged her to reengage in services and that respondent expressed interest in doing so but never followed through. Brumfield also testified respondent expressed interest in seeing A.B. and in preserving her parental rights. Respondent never completed any services and never visited A.B.

¶ 23 d. Trial Court's Findings

¶ 24 The trial court took judicial notice of Champaign County case No. 18-CF-496, where respondent committed the offense of aggravated battery on April 16, 2018, and the judgment entered February 13, 2019.

¶ 25 Following the fitness hearing, the trial court found respondent unfit where she failed (1) to make reasonable progress toward the return of A.B. during any nine-month period following the adjudication of neglect, specifically, April 1, 2018, to January 1, 2019 (750 ILCS 50/1 (D)(m)(ii) (West 2016)), and (2) to maintain a reasonable degree of interest, concern, or responsibility as to A.B.'s welfare. Specifically, the court stated, "essentially the evidence was overwhelmingly compelling that [respondent's] not been involved with remedial services or to any significant extent in her daughter's life through the time periods measured in this motion, and has essentially checked out, so to speak, in regard to having any involvement at all in trying to improve the situation and be restored to her ability as a parent." On June 3, 2018, the court entered a written adjudicatory order.

¶ 26 2. *Best-Interest Hearing*

¶ 27 On July 12, 2019, the trial court held a separate best-interest hearing. Respondent failed to attend the best-interest hearing but was represented by counsel. The court considered the record and best-interest reports from LSSI and Court Appointed Special Advocates (CASA). LSSI submitted a best-interest report which stated respondent's current whereabouts were

unknown and she failed to maintain a stable residence. Respondent had not been in contact with LSSI for the past couple of months. Respondent also never provided employment information and as of December 2018, respondent had outstanding warrants. Further, respondent failed to engage in the recommended treatment for substance abuse and never followed through with parenting classes or individual counseling. Respondent last visited A.B. in April 2018. A.B. remained in traditional foster care and was doing extremely well. A.B.'s speech had improved, she appeared very comfortable in the home, and she had regular visits with her three older siblings.

¶ 28       CASA's best-interest report mirrored LSSI's report. Both CASA and LSSI went through the best-interest factors and recommended terminating respondent's parental rights.

¶ 29       After hearing recommendations from counsel and considering the best-interest factors, the trial court found it was in A.B.'s best interest to terminate respondent's parental rights. On July 17, 2019, the court entered a written order terminating respondent's parental rights.

¶ 30       This appeal followed.

¶ 31                              II. ANALYSIS

¶ 32       On appeal, appellate counsel argues this case presents no potentially meritorious issues for review. We agree, grant appellate counsel's motion to withdraw, and affirm the trial court's judgment.

¶ 33                          A. Fitness Finding

¶ 34       For purposes of evaluating whether there exists arguable merit to claims that respondent could raise on appeal regarding her fitness, we must bear in mind that any one ground, properly proved, is sufficient to affirm. *In re Janine M.A.*, 342 Ill. App. 3d 1041, 1049,

796 N.E.2d 1175, 1181-82 (2003). Further, a trial court's unfitness finding will not be disturbed on review unless contrary to the manifest weight of the evidence, meaning unless the opposite conclusion is clearly evident or the finding is not based on the evidence. See *In re Gwynne P.*, 215 Ill. 2d 340, 354, 830 N.E.2d 508, 516-17 (2005); *Janine M.A.*, 342 Ill. App. 3d at 1049. As such, we agree there would be no arguable merit to a challenge to the court's finding of unfitness because, at a minimum, the court's finding respondent failed to make reasonable progress toward the return of A.B. during the nine-month period between April 1, 2018, and January 1, 2019, is not contrary to the manifest weight of the evidence.

¶ 35    The question of reasonable progress is an objective one, which requires the trial court to consider whether respondent's actions would support the court's decision to return the child home in the near future. See *In re Phoenix F.*, 2016 IL App (2d) 150431, ¶ 7, 51 N.E.3d 1020. In order for there to be reasonable progress, there must be some "demonstrable movement toward the goal of reunification." *In re C.N.*, 196 Ill. 2d 181, 211, 752 N.E.2d 1030, 1047 (2001).

¶ 36    Here, the evidence reflected, and the trial court reasonably found, that at the end of the nine-month period, respondent was no closer to having A.B. returned to her care than at the start of the nine-month period. Respondent never completed any services and only visited A.B. once during the relevant nine-month period. While LSSI conducted a substance-abuse screen with respondent in May 2018, respondent never made an appointment with Prairie Center or provided results of a substance-abuse assessment. As the court stated, respondent "essentially checked out, so to speak, in regard to having any involvement at all in trying to improve the situation and be restored to her ability as a parent."

¶ 37    Multiple caseworkers testified having issues contacting respondent. The few times respondent contacted a caseworker, she provided friend's phone numbers where she could

- 8 -

be reached. However, when the caseworkers tried to contact respondent using the numbers provided, they failed to reach her. Furthermore, respondent declined to provide Brumfield with her address because she feared LSSI would call the police. The caseworkers testified LSSI was not in contact with respondent for months and was unaware where she lived as she moved around a lot. While respondent expressed interest in seeing A.B. and in preserving her parental rights, she never took the steps to do so.

¶ 38            In light of the foregoing, the trial court's finding was not contrary to the manifest weight of the evidence. That is, the State met its burden of establishing that between April 1, 2018, and January 1, 2019, respondent made no reasonable progress toward the possibility that the court in the near future would be able to order A.B. returned to respondent. See *In re Jordan V.*, 347 Ill. App. 3d 1057, 1068, 808 N.E.2d 596, 605 (2004).

¶ 39                            B. Best-Interest Finding

¶ 40            Similarly, we conclude there is no arguable merit to a claim it was against the manifest weight of the evidence for the trial court to conclude that termination of parental rights is in A.B.'s best interests. See *In re Janira T.*, 368 Ill. App. 3d 883, 894, 859 N.E.2d 1046, 1055-56 (2006). A reviewing court will not disturb a trial court's best-interest determination unless it is against the manifest weight of the evidence. *S.M.*, 314 Ill. App. 3d at 687. In making a best-interest determination, the trial court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2016)), including the child's physical safety and welfare, including food and health; need for permanence, stability and continuity; sense of attachment, love, security, and familiarity; community ties; and the uniqueness of every child. 705 ILCS 405/1-3(4.05) (West 2016).

¶ 41          Here, the trial court considered best-interest reports of LSSI and CASA, both of which recommended termination of parental rights. Both reports asserted A.B. remained in traditional foster care and was doing extremely well. A.B.'s speech had improved, she appeared comfortable with the foster family, and she had regular visits with her three older siblings.

¶ 42          At the time of the best-interest hearing, respondent's current whereabouts were unknown, and she failed to maintain a stable residence. Also, respondent failed to engage in the recommended treatment and last visited A.B. in April 2018, over a year prior.

¶ 43          In looking at the evidence in conjunction with the statutory factors, the trial court found it was in A.B.'s best interest to terminate respondent's parental rights. Given the foregoing, the court's finding terminating respondent's parental rights was not contrary to the manifest weight of the evidence.

¶ 44                              C. Motion to Withdraw

¶ 45          In *S.M.*, 314 Ill. App. 3d at 685-86, this court set forth the proper procedure for appellate counsel's request to withdraw based on an *Anders* motion in parental rights termination cases. First, we required counsel to set out any irregularities or potential errors in a brief that may arguably be meritorious in his client's judgment. *Id.* at 685. Second, we required counsel to sketch the argument in support of these issues that could be raised and explain why he believed they are frivolous *if* such issues are identified. *Id.* (In *In re Austin C.*, 353 Ill. App. 3d 942, 946, 823 N.E.2d 981, 984 (2004), we clarified this statement by changing "if" in the above statement to "as to any such issue identified," requiring counsel to identify, argue, and explain the frivolity of all potential issues.) Third, we required counsel to conclude the case presented no viable grounds for appeal. *Id.* Fourth, we required counsel to include the transcripts of the fitness and best-interest hearings. *Id.*

¶ 46     After examining the record, the motion to withdraw, and appellate counsel's brief, we agree with counsel that this appeal presents no issues of arguable merit. Counsel's motion and brief sufficiently comply with the above procedures. We therefore grant counsel's motion to withdraw and affirm the judgment of the trial court.

¶ 47                              III. CONCLUSION

¶ 48     For the reasons stated, we affirm the trial court's judgment.

¶ 49     Affirmed.