Fourth Division
June 26, 2008

No. 1-03-2835

| | | |
|---|---|---|
| *In re* L.W., Minor, | ) | Appeal from the |
| Respondent | ) | Circuit Court of |
| | ) | Cook County |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | No. 96 JA 5810 |
| | ) | |
| v. | ) | |
| | ) | |
| Oscar H., | ) | Honorable |
| | ) | Sybil Thomas, |
| Respondent-Appellant). | ) | Judge Presiding. |

PRESIDING JUSTICE NEVILLE delivered the opinion of the court:

The People of the State of Illinois (State) commenced this case by filing a petition for adjudication of wardship against Sandra W., the mother of L.W., the minor who is the subject of these proceedings. Subsequently, the complaint was amended naming Oscar H., L.W.'s father, as a respondent. The trial court entered an order terminating Sandra W.'s and Oscar H.'s parental rights to L.W. In this appeal, Oscar H. appeals from the order terminating his parental rights, pursuant to section 1(D)(m) of the Adoption Act, and the Public Guardian files a cross-appeal from the trial court's finding that the State failed to prove that Oscar H. and Sandra W.[1] violated section 1(D)(b) of the Adoption Act. 750 ILCS 50/1(D)(b) (West 1996).

---

[1]Sandra W.'s case was affirmed on appeal in a <u>Finley</u> order on November 4, 2004.

<u>Pennsylvania v. Finley</u>, 481 U.S. 551, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987).

On December 23, 2005, we entered an order reversing and remanding with directions the trial court's order terminating Oscar H.'s parental rights. On March 29, 2006, the Illinois Supreme Court entered a supervisory order in which we were ordered to vacate our judgment in In re Oscar H. (same as In re L.W., 218 Ill. 2d 540 (2006)) and reconsider this case in light of In re Arthur H., 212 Ill. 2d 441 (2004). In re L.W., 218 Ill. 2d 540 (2006).

On September 21, 2006, after vacating our judgment and reconsidering this case in light of In re Arthur H., we reversed the trial court's order and remanded the case with directions. In re L.W., 367 Ill. App. 3d 844 (2006). On April 3, 2008, the supreme court reversed and remanded the case with directions that we consider the merits of Oscar H.'s challenge to the termination of his parental rights. In re Leona W., 228 Ill. 2d 439 (2008). For the reasons that follow, we affirm.

STATEMENT OF FACTS

L.W. was born October 21, 1996, and Sandra W. is L.W.'s biological mother. Immediately after her birth, L.W. tested positive for cocaine and a sexually transmitted disease. In addition, L.W. has a seizure disorder and asthma and is "mentally retarded." On November 6, 1996, while in the custody of her mother, L.W. was taken into custody by the Department of Children and Family Services (DCFS).

On November 8, 1996, the State filed a petition for adjudication of wardship against Sandra W. The original petition for adjudication of wardship listed L.W.'s father as "unknown." A temporary custody hearing was held and the trial court found probable cause that L.W. was abused or neglected and that it was a matter of immediate and urgent necessity to remove her from Sandra W.'s care pending an adjudicatory hearing. The court entered a temporary custody order that granted

temporary custody of L.W. to the guardianship administrator of DCFS.

On January 7, 1997, Oscar H. appeared in court and the trial court entered an order finding that Oscar H. had admitted in open court that he was L.W.'s biological father. All the parties stipulated that Oscar H., a 67-year-old man, was a noncustodial parent at the time of L.W.'s birth. The trial court appointed the Public Defender of Cook County (Public Defender) to represent Oscar H. On February 25, 1997, the petition for adjudication of wardship was amended to name Oscar H. as L.W.'s father.

On February 25, 1997, at an adjudicatory hearing, Sandra W. and Oscar H. stipulated to the following facts: (1) that on October 21, 1996, L.W. was born at 34 weeks gestation; (2) that Sandra W. told Judith Kilpatrick, a social worker with the Cook County Hospital, that she had used cocaine three weeks prior to L.W.'s birth and that she wished to give up custody of L.W.; (3) that at the time of L.W.'s birth, Sandra W.'s eight other children were in DCFS custody and she had not completed any drug treatment services; and (4) that Oscar H. was a noncustodial parent at the time of L.W.'s birth. Following the adjudicatory hearing, the trial court entered an adjudication order finding that L.W. was abused in violation of section 2-3(2)(ii) (substantial risk/physical injury) of the Juvenile Court Act of 1987 (Act)(705 ILCS 405/2-3(2)(ii) (West 1996)).

On April 29, 1997, following a dispositional hearing, the trial court entered a disposition order that found Oscar H. and Sandra W. were "unable for some reason other than financial circumstances alone to care for, protect, train or discipline" L.W. L.W. was placed in the custody of the guardianship administrator of DCFS. The trial court also entered an order of protection allowing Oscar H. unsupervised day visits with L.W., but the order did not permit unsupervised

contact between L.W. and Sandra W.

On May 13, 1997, Oscar H. filed an emergency motion that asked the court to vacate the previously entered placement orders and requested that L.W. be placed in his custody. Oscar H. argued that he was fit, willing, and able to care for L.W., and that it was in the best interest of L.W. to be returned to her father. On June 9, 1997, a hearing was held on Oscar H.'s emergency motion, and Oscar H. appeared at the hearing, but Sandra W. was not present. The court entered an agreed permanency order establishing a goal of returning L.W. home to Oscar H. within 12 months. The order stated that Oscar H.'s unsupervised visits were going well, that he had been steadily employed for 22 years, and that he was cooperating.

The record establishes that from 1998 to 2001, four permanency hearings were held. At each permanency hearing, the trial court entered a permanency order maintaining the goal of returning L.W. home to Oscar H. The record also contains DCFS service plans for L.W. that contain information about her siblings. The DCFS client service plans in the record that provide the names and some case numbers for L.W.'s siblings are as follows: (1) the November 27, 2000, service plan for L.W. (96JA5810) and S.H. (98JA346); (2) the May 18, 2001, service plan for L.W.; (3) the November 19, 2001, service plan for L.W.; (4) the May 14, 2002, service plan for L.W.; and (5) the November 26, 2002, service plan for L.W. The aforementioned service plans also provide the birth dates and medical backgrounds for L.W. and her siblings: (1) that O.W. was born on July 24, 1993; J.W. was born March 12, 1995; L.W. was born on October 21, 1996; T.H. was born on January 22, 1998; and S.H. was born on May 20, 1999; (2) that O.W. and J.W. both tested positive for syphilis at birth, like L.W., and were placed in temporary custody; (3) that T.H. was born premature and

exposed to cocaine, like L.W., and was placed in temporary custody; and (4) that S.H. was born drug exposed and placed in temporary custody. The May 1, 2000, Catholic Charities reunification services progress report provides the dates that Oscar H. was given custody of L.W.'s siblings by the juvenile court: (1) Oscar H. obtained custody of O.W. and J.H. on August 7, 1998; and (2) Oscar H. obtained custody of T.H. on February 25, 2000. Finally, a May 18, 2001, service plan indicates that Oscar H. obtained custody of S.H. on April 23, 2001.

On February 19, 2002, following a permanency hearing, the hearing officer recommended a goal of substitute care pending court determination on the State's petition to terminate parental rights. On March 15, 2002, Oscar H. filed an objection to the hearing officer's February 19, 2002, permanency recommendation goal of terminating his parental rights. Oscar H. argued that the goal should be to return L.W. home within five months because her siblings resided with him; he had proven his ability to care for L.W. and her siblings; and it would be in L.W.'s best interest to be returned to her father.

On April 19, 2002, the court entered a proposed permanency order establishing a goal of private guardianship. The court provided the following reasons for selecting the goal of private guardianship and for rejecting the goal of returning L.W. home: (1) that L.W. had been in foster care for five years; (2) that Sandra W. was not working toward reunification; (3) that Oscar H. had not made reasonable progress toward reunification; and (4) that the foster parent would like to become L.W.'s private guardian and would allow continued contact with L.W.'s biological family. The court entered an order with a goal of private guardianship.

On June 3, 2002, the Public Guardian filed a motion to approve L.W.'s out-of-state placement

in Kansas with her foster parent. On July 10, 2002, the trial court granted the motion and entered an order allowing L.W.'s foster parent to move her out of state to Kansas.

On December 6, 2002, following a permanency hearing, at which both parents were present, the trial court entered a "proposed" permanency order which established a goal of substitute care pending court determination of the State's petition for termination of parental rights. The order stated that Oscar H. and Sandra W. had not made substantial reunification with L.W. and that her foster parent would like to be her private guardian. The order stated that L.W.'s foster parent would allow continued contact with her biological family. In conjunction with the hearing, the Public Guardian filed a staffing summary from Melissa Frank, a clinical placement reviewer in DCFS's HELP unit. Frank stated in her summary that private guardianship was not an appropriate goal for L.W. because she would not be eligible for a subsidy through DCFS to address her medical need, therefore, it was in L.W.'s best interest to be adopted by her foster parent.

On March 3, 2003, the State filed a supplemental petition for appointment of a guardian with the right to consent to adoption (supplemental adoption petition). The supplemental adoption petition alleged that Sandra W. and Oscar H. were unfit parents and that Sandra W. and Oscar H. violated two of the same sections of the Act and that Sandra W. also violated two additional sections of the Act.[2] Specifically, the petition alleged that Oscar H.: (1)"failed to maintain a reasonable degree of

---

[2]There were two unfitness allegations in the petition that only applied to Sandra W.: (1) that "[s]he has failed to protect the child from conditions in the child's environment injurious to the child's welfare, in violation of 750 ILCS 50/1 D(g) and 705 ILCS 405/2-29"; and (2) that

interest, concern, or responsibility as to the child's (L.W.'s) welfare, in violation of 750 ILCS 50/1(D)(b) and 705 ILCS 405/2-29"; and (2) failed to "make reasonable efforts to correct the conditions which were the basis for the removal of the child from them and/or have failed to make reasonable progress toward the return home of the child to them within nine months after the adjudication of neglect or abuse *** or after an adjudication of dependency *** and/or within any 9 month period after said finding *** in violation of 750 ILCS 50/1(D)(m) and 705 ILCS 405/2-29."

On August 15, 2003, a termination of parental rights hearing was held. Prior to the commencement of the hearing, the Public Guardian made an oral motion in limine to exclude evidence concerning the "dispositions" entered at the conclusion of Oscar H.'s parental fitness hearing for L.W.'s siblings. The Public Guardian cited In re M.C., 201 Ill. App. 3d 792 (1990), as authority for his position. Oscar H. objected arguing that the court should hear evidence concerning his care of L.W.'s siblings because it was relevant to show his fitness as a parent. During the hearing, the State withdrew the counts in its supplemental petition based on sections 1(D)(g) ("[f]ailure to protect the child from conditions within his environment injurious to the child's welfare") and 1(D)(k) ("[h]abitual drunkenness or addiction to drugs, other than those prescribed by a physician, for at least one year immediately prior to the commencement of the unfitness proceeding") of the Adoption Act, and proceeded on the counts based on sections 1(D)(b) and

---

"[s]he has been an habitual drunkard and/or addicted to drugs other than those prescribed by a physician, for at least one year immediately prior to the *** proceeding, in violation of 750 ILCS 50/1 D(k) and 705 ILCS 405/2-29."

1(D)(m) of the Adoption Act. 750 ILCS 50/ 1(D)(b), (D)(g), (D)(k), (D)(m) (West 1996). Finally, the trial court continued the hearing until August 19, 2003, for a ruling on the Public Guardian's oral motion in limine.

On August 19, 2003, at the continuation of the termination of parental rights hearing, Oscar H. argued that the facts in In re M.C. were distinguishable and its holding inapplicable because in L.W.'s case, he had already successfully demonstrated his fitness as a parent for her siblings. Oscar H. also argued that if "bad evidence" regarding other children was admissible at a termination of parental rights hearing, then "good evidence" should also be admissible regarding the parent and other children.

The trial court, before ruling on the motion, made the following statement:

"What we are talking about is [L.W.] and talking only about [L.W.] in this case. We are not talking about the other children home with Mr. [H.] and his fitness as to those children. Each case stands on its own, and each one is an individual case. [L.W.] is her own case."

The trial court then granted the Public Guardian's motion in limine holding:

"[E]vidence of Mr. [H.]'s or evidence of his fitness as to other children, I am going to exclude that, that evidence, because we are going to deal specifically with [L.W.]."

Termination Proceedings

Bifurcated hearings were held regarding the issues of the unfitness of the parents and the best interest of the child. The termination of parental rights hearing proceeded in two parts: first, a

determination of Oscar H.'s and Sandra W.'s fitness to be parents based on sections 1(D)(b) and 1(D)(m) of the Adoption Act; and second, a determination of the best interests of L.W.

Unfitness Proceedings

During the fitness portion of the proceedings, the State called Mary Henderson, a case supervisor with Catholic Charities, as its only witness. Henderson was assigned as the supervisor for L.W.'s case and supervised the work of five caseworkers, including Gina Barrios. Henderson testified that she reviewed L.W.'s file, including service plans, progress reports and special needs documentation. According to Henderson, L.W.'s special needs were a factor in determining what services the biological parents would need to complete before reunification would be possible. Henderson testified that Oscar H.'s tasks revolved around him becoming involved in L.W.'s special needs, including attending appointments with L.W.'s doctors to develop an understanding of her medical needs. Henderson also testified that Oscar H. was required to attend L.W.'s individualized educational program (IEP) meetings at her school in order for him to learn how to help L.W. outside of school. According to Henderson, Oscar H. was being required to (1) attend parenting classes; (2) submit to random drug testing; (3) identify his relationship with L.W.'s mother; and (4) attend bonding, counseling and cognitive assessments. Henderson testified that Oscar H. completed the parenting classes, all the assessments and the drug testing, which were negative. According to Henderson, DCFS repeatedly inquired about Oscar H.'s relationship with Sandra W. because she was a known drug abuser with mental health issues. Henderson testified that Oscar H. consistently denied having a relationship with Sandra W., but continued to father children with her.

Oscar H. only attended 2 out of approximately 100 of L.W.'s medical appointments, despite

having been told when and where they were. Oscar H. claimed he had a transportation problem getting to those appointments. Henderson testified that DCFS gave Oscar H. the responsibility of scheduling alternative, more conveniently located appointments for L.W. Despite being asked to complete the task several times, Oscar H. indicated his understanding of the task yet did not complete it.

Henderson testified that Oscar H. attended training programs for asthma, CPR and seizures, but those programs would not provide the same information as attending medical appointments. Henderson also testified that Oscar H. never showed an interest in L.W.'s educational needs. According to Henderson, although he went to L.W.'s school two or three times, when ordered to by the court, Oscar H. did not attend a single IEP session. Oscar H. also told the caseworkers who reported to Henderson that he did not believe that L.W. suffered from the seizure disorder, asthma and developmental delays, but that she lacked discipline and that, once she was returned to him, all of her special needs would disappear. According to Henderson, Oscar H. also expressed a belief that DCFS was drugging his child and that he was interested in suing DCFS because of it.

At the conclusion of the fitness portion of the proceedings, the trial court found that Oscar H. and Sandra W. were unfit under section 1(D)(m) of the Adoption Act by clear and convincing evidence. 750 ILCS 50/1(D)(m) (West 1996). The trial court found that Sandra W., L.W.'s mother, was found to be unfit because she failed to address her drug problem. Oscar H. was found unfit because he did not make reasonable efforts on behalf of L.W. specifically "so he could know what is peculiar to his daughter, so he could identify the signs of when these seizures are coming on to his daughter, to know how he should respond to his particular daughter in each one of those instances."

The trial court also found that Oscar H. was unfit because he was "repeatedly asked over and over again to recognize his daughter's special needs, and to come into the doctor's office, come into the school to help learn more about his daughter's needs so he can assist her directly, specifically as a parent one on one, and that didn't happen." The trial court found that the State failed to prove by clear and convincing evidence that Oscar H. or Sandra W. had not maintained a reasonable degree of interest, concern, or responsibility toward L.W.'s welfare under section 1(D)(b) of the Adoption Act. Finally, the trial court found that both parents failed to make reasonable efforts to correct the conditions that necessitated L.W.'s removal.

Best Interest Proceedings

On August 19, 2003, the trial court conducted a hearing to determine the best interests of the child. Ms. R., L.W.'s licensed foster parent, testified that she had been caring for L.W. since the child was a couple of weeks old. At the time of the best interest proceedings, L.W. had been in Ms. R.'s care for approximately seven years. Ms. R., who happens to be a registered nurse, testified that L.W. had a seizure disorder, asthma and developmental delays. Ms. R. testified that she had training in administering L.W.'s anti-seizure medication and nebulizer treatments for her asthma. According to Ms. R., she lives with L.W. and another adopted child in her home in Kansas. Ms. R. testified that she, L.W. and the other child are very close and that L.W. calls her mommy. Ms. R. also testified that L.W. (1) takes swimming lessons; (2) has attended summer camp; and (3) has experienced scholastic improvement. Ms. R. also testified that she would like to have the foster arrangement converted into an adoption.

Gina Barrios testified that Ms. R.'s home is a safe and appropriate environment for L.W.,

with no signs of abuse or neglect. Barrios also testified that, in 2003, a 15-year-old neighbor allegedly inappropriately touched L.W., but that the situation was handled appropriately. Barrios also testified that Ms. R. had expressed a desire to formally adopt L.W.

Before beginning cross-examination, Oscar H. asked the trial court to consider evidence of his relationship with his other children. The trial court limited the testimony concerning the other children to testimony that related to L.W.'s best interests to be united with her paternal family.

Barrios also testified that Oscar H. had engaged in regular visits with L.W. During these visits, Oscar H.'s other children were present and L.W. enjoyed the visits. According to Barrios, L.W. was bonded to her siblings.

Barrios, who was recalled by L.W.'s counsel, testified that the trial court allowed Ms. R. to move her to Kansas. According to Barrios, a child welfare agency in Kansas monitored Ms. R.'s placement. Barrios testified that she found Ms. R.'s care of L.W. to be exceptional and that she provides a loving, nurturing environment.

On August 20, 2003, the parental rights of Oscar H. and Sandra W. were terminated. The trial court found that "it would not be in [L.W.'s] best interests to remove her from a home that she's been in for the last six years, a person she has known practically since birth as her mother."

On September 18, 2003, Oscar H. filed his notice of appeal this case and presents two issues for our review: (1) whether the trial court erred when it granted a motion in limine and excluded evidence of L.W.'s siblings' dispositions; and (2) whether the trial court's finding of parental unfitness was against the manifest weight of the evidence in light of the fact that Oscar H. was found fit to care for four of L.W.'s siblings, some of whom suffer from the same or similar medical

problems as L.W. Finally, on September 24, 2003, the Public Guardian filed a notice of cross-appeal and presents the following issue for our review: whether the trial court erred in failing to find Oscar H. and Sandra W. unfit under section 1(D)(b) of the Adoption Act.

This court, as previously indicated, initially reversed and remanded this case with directions. In re L.W., 362 Ill. App. 3d 1106 (2005). The supreme court denied leave to appeal, but in the exercise of its supervisory authority, directed this court to vacate its judgment and reconsider this case in light of In re Arthur H., 212 Ill. 2d 441 (2004). In re L.W., 218 Ill. 2d 540 (2006) (supervisory order). Following remand, we reached the same conclusion and again reversed and remanded this case to the circuit court. In re L.W., 367 Ill. App. 3d 844 (2006). The State and the office of the Cook County public guardian, representing L.W., petitioned the supreme court for leave to appeal pursuant to Supreme Court Rule 315. 210 Ill. 2d R. 315. The supreme court granted the State's petition and the office of the Cook County public guardian's petition for leave to appeal and subsequently consolidated them. In re LeonaW., 222 Ill. 2d 608 (2007). On April 3, 2008, the supreme court reversed this court a second time and remanded the case to us with directions that we address Oscar H.'s claims on the merits. In re LeonaW., 228 Ill. 2d 439 (2008). Accordingly, pursuant to the supreme court's directions, we review Oscar H.'s claims on the merits.

ANALYSIS

Parental Unfitness

Oscar H. argues that the trial court erred when it found him to be an unfit parent to L.W. despite the fact that he was considered appropriately fit to care for four of L.W.'s siblings, some of whom suffered from the same or similar medical problems. The State argues that Oscar H. was

properly found to be an unfit parent because he repeatedly refused to become involved in L.W.'s medical and emotional needs. The State argues that Oscar H.'s responsibility to make reasonable efforts to correct the conditions that were the bases for L.W.'s removal is not affected by the fact that Oscar H. was the noncustodial parent. According to the State, Oscar H. made no efforts for L.W., absent DCFS and court requirements, and he failed to seek custody of L.W. sooner than he did, despite his knowledge that two of his other children had been taken into DCFS custody because those children were neglected by their mother. The State also points out that, at the time L.W. was taken into DCFS custody, Oscar H. had no knowledge of the medical challenges of his special needs daughter. Therefore, the State argues that Oscar H. failed to become involved in L.W.'s medical care during the nine month period following the entry of the adjudication order on February 25, 1997. In addition to the failure to make reasonable efforts, the State also argues that Oscar H. failed to make reasonable progress. The State also argues that Oscar H. consistently denies that L.W. has special needs.

The Public Guardian also argues that Oscar H. failed to make both reasonable efforts and reasonable progress to resolve the conditions that led to L.W. being removed from Sandra W.'s care and placed in DCFS' custody. In addition, the Public Guardian adds that Oscar H. was asked to go to L.W.'s doctors to get a better understanding of her special needs, but only attended two appointments that did not include any specialized training to learn the symptoms of her medical conditions. The Public Guardian also argues that Oscar H. knew or should have known that L.W.'s mother was addicted to drugs and had already given birth to two of his other children with special needs.

In order to terminate the parental rights of nonconsenting parents, an adjudication of unfitness must first be made. In re Janira T., 368 Ill. App. 3d 883, 892 (2006), citing In re Chilean, 304 Ill. App. 3d 580, 583 (1999). Cases involving allegations of neglect and adjudication of wardship are *sui generis* and must be decided on the basis of their unique circumstances. In re Arthur H., 212 Ill. 2d 441, 463 (2004), citing In re N.B., 191 Ill. 2d 338, 346 (2000), and In re Christina M., 333 Ill. App. 3d 1030, 1034 (2002). "This analytical principle underscores the 'fact-driven nature of neglect and injurious environment rulings.' " Arthur H., 212 Ill. 2d at 463, quoting N.B., 191 Ill. 2d at 346.

The Juvenile Court Act of 1987 provides a step-by-step process that courts use to decide whether a child should be removed from his or her parents and made a ward of the court. Arthur H., 212 Ill. 2d at 462, citing 705 ILCS 405/1-1 *et seq*. (West 2000). Once a child is placed in temporary custody, a trial court must make a finding of abuse, neglect or dependence before it conducts an adjudication of wardship. Arthur H., 212 Ill. 2d at 462, citing 705 ILCS 405/2-21 (West 2000) and In re N.B., 191 Ill. 2d 338, 343 (2000). The State's burden is to prove the allegations of abuse, neglect or dependency by a preponderance of the evidence. In re Faith B., 216 Ill. 2d 1, 13 (2005), citing In re Arthur H., 212 Ill. 2d at 463-64. The grounds that will support a finding of unfitness are found in section 1(D) of the Adoption Act. In re Janira T., 368 Ill. App. 3d at 892, citing 750 ILCS 50/1(D) (West 2002). "Although section 1(D) sets out various grounds under which a parent may be deemed unfit, an unfitness finding may be entered if there is sufficient evidence to satisfy any one statutory ground." Janira T., 368 Ill. App. 3d at 892, citing In re Donald A.G., 221 Ill. 2d 234, 244 (2006). The trial court's "finding of parental unfitness must be supported by clear and convincing evidence." Janira T., 368 Ill. App. 3d at 892, citing In re Katrina R., 364 Ill. App. 3d 834, 842

(2006). Therefore, we only disturb a trial court's finding that there is clear and convincing evidence that a parent is unfit if that finding is found to be against the manifest weight of the evidence. Faith B., 216 Ill. 2d at 13-14, quoting Arthur H., 212 Ill. 2d at 464; see also Janira T., 368 Ill. App. 3d at 892, citing In re D.D., 196 Ill. 2d 405, 417 (2001).

We note that in the supplemental adoption petition, Oscar H. and Sandra W. were initially charged with being unfit pursuant to four sections of the Adoption Act sections 1(D)(b), 1(D)(g), 1(D)(k) and 1(D)(m). 750 ILCS 50/1 (D)(b), (D)(g), (D)(k), (D)(m) (West 1996). We also note that the State dismissed its unfitness counts predicated on sections 1(D)(g) and 1(D)(k) of the Adoption Act (750 ILCS 50/1(D)(g), (D)(k) (West 1996)), and the trial court found that the State failed to prove that Oscar H. violated section 1(D)(b) of the Adoption Act. 750 ILCS 50/1(D)(b) (West 1996). Therefore, we review the trial court's finding that Oscar H. violated section 1(D)(m) of the Act.

In order to find that a parent is unfit under section 1(D)(m) of the Adoption Act, the trial court must find clear and convincing evidence that the parent failed to make "reasonable progress" toward the return home of his or her child. In re H.C., 305 Ill. App. 3d 869, 874 (1999), citing 750 ILCS 50/1(D)(m) (West 1996), and In re M.W., 199 Ill. App. 3d 1050, 1053 (1990). " 'Reasonable progress' exists when a parent shows a minimum measurable or demonstrable movement toward the return of his or her child." In re H.C., 305 Ill. App. 3d at 875, citing In re A.P., 277 Ill. App. 3d 593, 598 (1996). "A court should not make a finding of reasonable progress unless the evidence shows the parent's conduct is improving and will soon comply with ordered directives." In re H.C., 305 Ill. App. 3d at 875, citing In re L.L.S., 218 Ill. App. 3d 444, 461 (1991). At a fitness hearing, it is the parent's attempt to remedy past conduct in the then-existing circumstances that is under scrutiny.

In re Paul, 101 Ill. 2d 345, 352-53 (1984).

Under section 1(D)(m) of the Adoption Act, the failure of a parent to make reasonable progress toward the return of the child to the parent within nine months[3] after an adjudication that the minor is neglected or abused under section 2-3 of the Juvenile Court Act of 1987 (705 ILCS 405/2-3 (West 1998)) is grounds for the court to find that person unfit to have a child. 750 ILCS 50/1(D)(m) (West 1998).  Section 2-3(2)(ii) of the Act, the section allegedly violated by Oscar H., provides that an abused minor includes any minor under 18 years of age whose parent creates a

---

[3] We note that, when this case was originally filed in 1996, section 1(D)(m) of the Act required that a parent must demonstrate reasonable efforts to make reasonable progress toward the child's return home within 12 months following the adjudication of abuse or neglect.  750 ILCS 50/1(D)(m) (West 1996).  However, section 1(D)(m) of the Act was amended in Public Act 90-27 (Pub. Act 90-27, § 45, eff. January 1, 1998 (1997 Ill. Legis. Serv. 1742, 1784 ) and Public Act 90-28 (Pub. Act 90-28, § 10-25, eff. January 1, 1998 (1997 Ill. Legis. Serv. 1792, 1858 ) (amending 750 ILCS 50/1(D)(m) (West 1998).  The amendments shortened the time period, from 12 months to nine months, during which a parent must demonstrate reasonable efforts or make reasonable progress toward the child's return home.  Therefore, because the statute was amended during the pendency of this litigation, we apply the nine month time period found in the 1998 version of section 1(D)(m) of the Act because the nine month time period was codified in section 1(D)(m) of the Act when the decision was made in this case.  750 ILCS 50/1 (D) (m) (West 1998).

substantial risk of physical injury to such minor by other than accidental means which would be likely to cause death, disfigurement, impairment of emotional health, or loss or impairment of any bodily function. 705 ILCS 405/2-3(2)(ii) (West 1998).

We find that the trial court's finding of parental unfitness is not against the manifest weight of the evidence because Oscar H. did not demonstrate reasonable efforts or make reasonable progress toward L.W.'s return home within nine months following the adjudication of abuse or neglect, as required by section 1(D)(m) of the Adoption Act. 750 ILCS 50/1(D)(m) (West 1998). The evidence established that Oscar H. only attended two of approximately 100 medical appointments and he was only at L.W.'s school two or three times and never attended her IEPs. In finding Oscar H. unfit, the trial court found that, during the history of the case, he missed her medical appointments and did not attend training sessions intended to help him learn to deal with his daughter's special needs, particularly how to cope with L.W.'s seizure condition. These goals were formulated and implemented as clear-cut prerequisites to reunification. However, instead of actively participating in the plans created to help him accomplish the necessary goals toward reunification, the record reveals that Oscar H. steadfastly denied the existence of L.W.'s special needs. Therefore, the trial court found Oscar H. unfit (1) because he did not make reasonable efforts on behalf of L.W. specifically "so he could know what is peculiar to his daughter, so he could identify the signs of when these seizures are coming on to his daughter, [and] *** know how he should respond to his particular daughter in each one of those instances," and (2) because he was "repeatedly asked over and over again to recognize his daughter's special needs, and to come into the doctor's office, come into the school to help learn more about his daughter's needs so he can assist her directly,

specifically as a parent one on one, and that didn't happen." Based upon the plain language of section 1(D)(m) of the Adoption Act, we find that the trial court did not err when it found that Oscar H. (1) failed to make reasonable efforts to correct the conditions that were the basis for L.W.'s removal; or (2) failed to make reasonable progress toward the return of the child within nine months after the adjudication of neglect or abuse. 750 ILCS 50/1(D)(m) (West 1998). Accordingly, we hold the trial court findings were not against the manifest weight of the evidence.

Best Interest of the Child

Next, at the best interest stage of proceedings to terminate a parent's rights, the parent's rights must yield to the best interest of the child. In re Veronica J., 371 Ill. App. 3d 822, 831 (2007), citing In re M.H., 196 Ill. 2d 356, 362-63 (2001). Because they are considered to be of fundamental importance, courts will not lightly terminate parental rights. In re Veronica J., 371 Ill. App. 3d at 831, citing In re Tashika F., 333 Ill. App. 3d 165, 170 (2002). The court's best-interest finding will not be reversed unless it is against the manifest weight of the evidence. Veronica J., 371 Ill. App. 3d at 831-32, citing In re H.D., 343 Ill. App. 3d 483, 494 (2003).

Although Oscar H.'s appeal challenges the trial court's finding that he is an unfit parent, he has not challenged the trial court's finding that the termination of his parental rights is in the best interest of L. W. Our supreme court has consistently held that a party's failure to raise an issue may be deemed a forfeiture of that issue by waiver. Buenz v. Frontline Transp. Co., 227 Ill. 2d 302, 320 (2008), citing Sullivan v. Edward Hospital, 209 Ill. 2d 100, 124-25 (2004); see also 188 Ill. 2d R. 341(e)(7) ("Points not argued [in the appellant's brief] are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing").

Waiver notwithstanding, L.W. has been in her foster home since she was 10 days old. The home was found by Barrios to be safe and appropriate with no signs of abuse or neglect. L.W. considers her foster mother to be her mother and her foster brother to be her brother. In the bonding assessments, it was determined that it would be beneficial for L.W. to remain with her foster parent. In light of these facts, the trial court's finding that the termination of Oscar H.'s parental rights is in L.W.'s best interest is not against the manifest weight of the evidence.

## The Motion in Limine

Next, Oscar H. argues that the trial court erred when it granted the Public Guardian's oral motion in limine to exclude evidence of L.W.'s siblings' dispositions. Oscar H. argued before the trial court that evidence of his ability to care for L.W.'s four siblings established his parental fitness and ability to care for L.W. The trial court granted the Public Guardian's oral motion in limine and held that evidence of Oscar H.'s parental fitness and ability to care for L.W.'s four siblings would be excluded because the court "was going to deal specifically with [L.W.]"

The State argues that Oscar H. waived this issue. We note that the rule of waiver is an admonition to the parties and not a limitation on the jurisdiction of this court. Illinois State Chamber of Commerce v. Filan, 216 Ill. 2d 653, 664 (2005), citing In re W.C., 167 Ill. 2d 307, 323 (1995). "A reviewing court may, in furtherance of its responsibility to provide a just result and to maintain a sound and uniform body of precedent, override considerations of waiver that stem from the adversarial nature of our system." Filan, 216 Ill. 2d at 664, citing Dillon v. Evanston Hospital, 199 Ill. 2d 483, 504-05 (2002). We, like the court in Filan, believe it appropriate to address the parties' arguments on the merits. Accordingly, we decline to find waiver. Filan, 216 Ill. 2d at 664; see also

Central Illinois Light Co. v. Home Insurance Co., 213 Ill. 2d 141, 152 (2004).

The State also argues that Oscar H. made no offer of proof at trial with evidence to establish his parental fitness in order to preserve the issue for review. The supreme court specifically addressed this issue in its opinion when it remanded this case for this court to consider Oscar H.'s issues on the merits. The supreme court explained that "[a]n offer of proof is *** normally mandatory in order to preserve for review the question of whether a motion *in limine* was properly granted" but that "[t]hat requirement may be relaxed where it is apparent that the trial court clearly understood the nature and character of the evidence sought to be introduced," (In re Leona W., 228 Ill. 2d at 461, n.5, citing Dillon v. Evanston Hospital, 199 Ill. 2d 483, 495 (2002). The supreme court held:

> "Generally speaking, evidentiary motions, such as motions *in limine*, are directed to the trial court's discretion. A trial court's ruling on such motions will not be disturbed on review absent an abuse of that discretion. People v. Harvey, 211 Ill. 2d 368, 392 (2004). The threshold for finding an abuse of discretion is high. A trial court will not be found to have abused its discretion with respect to an evidentiary ruling unless it can be said that no reasonable man would take the view adopted by the court. See Clayton v. County of Cook, 346 Ill. App. 3d 367, 377 (2003). Moreover, even where an abuse of discretion has occurred, it will not warrant reversal of the judgment unless the record indicates the existence of substantial prejudice

- 21 -

affecting the outcome of the trial. Holston v. Sisters of the Third Order of St. Francis, 165 Ill. 2d 150, 170-71 (1995).

Neither of these conditions was satisfied in this case. As we have discussed, the State sought to find Oscar H. unfit on two grounds: that he failed to maintain a reasonable degree of interest, concern or responsibility for L.W.'s welfare (see 750 ILCS 50/1(D)(b) (West 1996)) and that he had not made reasonable efforts to correct the conditions that were the basis for L.W.'s removal or made reasonable progress toward her return to him (see 750 ILCS 50/1(D)(m) (West 1996)). Both of these grounds deal specifically with the steps Oscar H. has taken with respect to L.W. How he has handled his parental responsibilities with respect to L.W.'s siblings is not germane to that question. We therefore cannot say that no reasonable person would have taken the circuit court's view in allowing the motion *in limine* and excluding the evidence. We note, moreover, that while the circuit court granted the motion *in limine*, it nevertheless did hear testimony later in the proceedings that custody of L.W.'s siblings had been returned to Oscar H. The fact that Oscar H. was apparently fit to parent those children was therefore before the circuit court notwithstanding the court's ruling on the motion *in limine*. Although Oscar H. may not have been allowed to present the details of the care

he provided to those other children, the appropriate course when

faced with such a ruling was to make an offer of proof. Snelson v.

Kamm, 204 Ill. 2d 1, 23-24 (2003). No such offer was made. We

therefore have no basis for ascertaining how, if at all, that evidence

may have altered the outcome of the case. As a result, we cannot say

that allowing the motion *in limine* resulted in any material prejudice

to Oscar H." In re Leona W., 228 Ill. 2d at 460-61.

Therefore, because the supreme court found that Oscar H. failed to make an offer of proof when the

trial court refused to allow him to present the details of the care he provided to his other children

(Snelson v. Kamm, 204 Ill. 2d 1, 23-24 (2003)), we follow the supreme court's holding and find that

the "circuit court's ruling on the *in limine* motion [does not] provide an alternative basis for

reversing that court's judgment." In re L.W., 228 Ill. 2d at 459-60.

The Public Guardian's Cross-Appeal

In a cross-appeal, the Public Guardian argues that the trial court erred when it found that

neither party failed to maintain a reasonable degree of interest, concern or responsibility toward

L.W.'s welfare under section 1(D)(b) of the Adoption Act. 750 ILCS 50/1(D)(b) (West 1996).

However, case law makes it clear that "[a]s a reviewing court, we can sustain the decision of a lower

court on any grounds which are called for by the record, regardless of whether the lower court relied

on those grounds and regardless of whether the lower court's reasoning was correct." Leonardi v.

Loyola University of Chicago, 168 Ill. 2d 83, 97 (1995); Janira T., 368 Ill. App. 3d at 892 (an

unfitness finding may be entered if there is sufficient evidence to satisfy one statutory ground).

Having found that Oscar H. was properly found unfit based on section 1(D)(m) of the Adoption Act, it is unnecessary for this court to consider the Public Guardian's cross-appeal.  <u>Leonardi</u>, 168 Ill. 2d at 97; <u>Janira T.</u>, 368 Ill. App. 3d at 892.

CONCLUSION

In light of the foregoing, the decision of the trial court to terminate Oscar H.'s parental rights is affirmed.

Affirmed.

O'BRIEN, J., and GALLAGHER, J., concur.