**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230550-U

Order filed February 13, 2024

---

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| *In re* G.G., | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| a Minor | ) | Will County, Illinois, |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | Appeal No. 3-23-0550 |
| Petitioner-Appellee, | ) | Circuit No. 21-JA-354 |
| | ) | |
| v. | ) | |
| | ) | |
| Ketara M., | ) | Honorable |
| | ) | Paula A. Gomora, |
| Respondent-Appellant). | ) | Judge, Presiding. |

---

JUSTICE BRENNAN delivered the judgment of the court.
Justices Albrecht and Davenport concurred in the judgment.

---

**ORDER**

¶ 1     *Held*: We lack jurisdiction to consider respondent's challenge arising from the adjudicatory hearing. Appeal dismissed in part. The trial court's fitness and best interests findings were not against the manifest weight of the evidence. The trial court properly admitted evidence at the fitness hearing. Respondent did not receive the ineffective assistance of counsel. Affirmed.

¶ 2     Respondent, Ketara M., appeals from the trial court's order finding that she was an unfit parent and that it was in the best interests of the minor, G.G., that respondent's parental rights be

terminated. On appeal, respondent argues that (1) she was denied due process when the trial court conducted the adjudicatory hearing in her absence, or, in the alternative, the denial of her motion to continue the hearing was an abuse of discretion; (2) the trial court's unfitness and best interests findings were against the manifest weight of the evidence; (3) the trial court improperly admitted certain evidence at the fitness hearing; and (4) trial counsel provided ineffective assistance of counsel. For the reasons that follow, we dismiss the appeal in part and affirm.

¶ 3                                    I. BACKGROUND

¶ 4         On November 19, 2021, respondent gave birth to the minor. The minor tested positive for cocaine at birth and was taken into protective custody the next day. On November 22, 2021, petitioner, the State filed its original petition, alleging two counts of neglect. The first count alleged that the minor's environment was injurious in that she was born exposed to a controlled substance and that respondent was found dispositionally unfit, and remained so, as to three other minor children, namely D.M., A.M., and J.G., who also had neglect cases pending. 705 ILCS 405/2-3(1)(b) (West 2020). The second count alleged that the minor's "blood, urine, or meconium contain[ed] any amount of a controlled substance *** not as the result of medical treatment administered to the mother or the newborn infant ***." *Id.* § 2-3(1)(c).

¶ 5         On November 23, 2021, the trial court conducted a temporary custody hearing. Respondent was present and represented by counsel. Calvin G. was identified as the minor's biological father but is not a party to this appeal.[1] By stipulation of the parties, the court found probable cause that the minor was neglected. Temporary custody was awarded to Illinois Department of Children and Family Services (DCFS), who subsequently referred the case to Lutheran Child and Family

_____

[1] Calvin G. was also identified as J.G.'s biological father.

Services of Illinois (LCFS). Respondent was granted "frequent and liberal" visitation with the minor, which the court defined as "no less than two times a week for two hours at each visit." Court Appointed Special Advocates (CASA) was appointed to represent the best interests of the minor. The court ordered respondent to cooperate with DCFS and admonished her that failure to comply with her service plan could result in the termination of her parental rights. On November 30, 2021, the minor was placed with her current foster parents, Michael M. and Stephanie M.

¶ 6        On April 28, 2022, the court conducted an adjudicatory hearing. Respondent's counsel represented that respondent called his office to say that she could not attend but that he could not "make out her excuse" as to why, citing issues with respondent's cell phone. After hearing testimony from Susan McHale, the LCFS caseworker at the time, and taking judicial notice of the minor's medical records and the dispositional orders for respondent's other children, the court found that the minor was neglected in that her environment was injurious to her welfare and she was born with cocaine in her system.

¶ 7        A dispositional hearing was scheduled for May 24, 2022. In preparation thereof, CASA filed a report stating that respondent inconsistently attended virtual visits. LCFS also filed a dispositional report. The service plan for February 2022 to August 2022 indicated that respondent had a history of bipolar disorder and attention deficit/hyperactivity disorder and was prescribed medications in the past. However, respondent admitted that she never took the medications and, instead, self-treated with cocaine. The service plan showed that respondent achieved "Unsatisfactory Progress" as to completion of the following steps: her portion of the integrated assessment and any recommendations therefrom, drug and alcohol assessments and any recommendations therefrom, signing releases from information between her service providers and LCFS, drug tests, and a psychiatric evaluation and any recommendations therefrom. Respondent

3

had not engaged in any services. Respondent's counsel argued that respondent was primarily in need of substance abuse services and requested that she should be "found unable at this time." The court found that it was in the best interests of the minor and public that the minor be made a ward of the court. The written dispositional order was entered the same day.

¶ 8        On September 27, 2022, the court conducted a permanency review hearing, which respondent did not attend. Respondent did not make any efforts or progress toward the goal of return home and failed to maintain communication with LCFS. Further, her parental rights as to her other children were terminated the week prior. The overall status of her service plan remained "Unsatisfactory Progress." The judge referred the case to legal screening.

¶ 9        On December 9, 2022, the State filed a motion to terminate respondent's parental rights, alleging the following grounds of unfitness: (1) failure to maintain a reasonable degree of interest, concern, and responsibility as to the minor's welfare ("reasonable degree" ground) (750 ILCS 50/1(D)(b) (West 2020)); (2) failure to make reasonable efforts to correct the conditions which necessitated removal of the minor ("reasonable efforts" ground) (*id.* § 1(D)(m)(i)); and (3) failure to make reasonable progress towards return of the minor within nine months after entry of the adjudicatory order ("reasonable progress" ground) (*id.* § 1(D)(m)(ii)). The motion was served via publication, as respondent's whereabouts were unknown. Krystal Vergara took over as the caseworker around this time. On January 30, 2023, respondent was found in default. On February 27, 2023, respondent filed a motion to vacate the default order, arguing that she was in treatment and unable to attend court when the order was entered. On April 4, 2023, the default order was vacated.

¶ 10        A permanency review hearing was scheduled for July 14, 2023. LCFS supplied the court with a detailed report indicating that respondent only made her whereabouts known on January 24,

4

2023, at which time she advised LCFS that she was in inpatient treatment at Gateway Foundation (Gateway). Vergara obtained respondent's paperwork, which showed that she completed substance use and psychiatric evaluations at Gateway. She sought treatment for alcohol, cannabis, and crack cocaine use. Respondent was diagnosed with various substance use disorders and severe generalized anxiety disorder (GAD). The diagnoses section also noted, "r/o bipolar depression vs borderline personality disorder." To address respondent's substance use, the provider encouraged psychotherapy and community support resources. To address respondent's GAD, the provider prescribed medications, encouraged therapy at Gateway, and referred her to individual/outpatient therapy. The LCFS report, including the evaluations, were filed and tendered to the court.

¶ 11 Respondent was successfully discharged from Gateway on February 14, 2023. She then moved into A Fresh Start Sober Living Environments (Fresh Start); however, she was evicted on March 1, 2023, after testing positive for cocaine. Respondent tested positive for cocaine again on March 24, 2023. Thereafter, respondent failed to appear for multiple scheduled drug tests and fell out of contact with LCFS. Respondent did not seek additional treatment or evaluations after her relapse. On August 29, 2023, the permanency goal was changed to substitute care pending the termination of parental rights.

¶ 12 On September 13, 2023, the court conducted a permanency review hearing. The State represented that respondent still had not participated in an updated integrated assessment and was not attending visits, despite them being offered via Zoom per respondent's request. Her last virtual visit with the minor was in May 2022. LCFS filed a report outlining respondent's treatment in more detail. In April 2023, respondent disclosed to LCFS that she relapsed and requested a referral for treatment, which she received two days later. Thereafter, respondent missed an appointment with LCFS to discuss services and refused to disclose her address to LCFS. The service plan for

5

February 2023 to August 2023 indicated that respondent achieved "Unsatisfactory Progress" in all areas, with the exception of having executed a release of information between LCFS, Gateway, and Fresh Start. The service plan noted respondent's substance abuse evaluation and successful discharge from Gateway, as well as her subsequent discharge from Fresh Start. As for the psychiatric portion, the service plan stated that respondent still needed to complete an evaluation to receive a clear diagnosis and comply with all recommended services. Respondent did, in fact, complete a 30-minute psychiatric evaluation at Gateway in January 2023.

¶ 13    On October 19, 2023, the court conducted termination proceedings. At the fitness hearing, the LCFS caseworker supervisor, Carolyn Streadwick, testified that, between April 2022 and August 2022, respondent refused all in-person visitation and had minimal virtual visits, which she could count "on one hand." Respondent was unemployed and without a vehicle, and Streadwick offered to arrange for an LCFS employee pick respondent up for in-person visitation at the office. Respondent did not accept the offer. Respondent did not engage in any services, including substance abuse and psychiatric evaluations, or make herself available for an integrated assessment.

¶ 14    Vergara also testified as to respondent's failure to complete an integrated assessment and her evaluations. Vergara indicated that it was difficult to establish and maintain contact with respondent due to her cell phone frequently being disconnected. At the time of the hearing, the minor was one year and eleven months of age, and Vergara was only aware of one visit (via Zoom) between respondent and the minor. Respondent did not provide Vergara with a reason for refusing in-person visitation. Vergara was unable to conduct any home visits at respondent's residence, as she refused to disclose her address. Vergara testified that respondent never sent gifts or clothes to

6

the minor. At one point, respondent did ask for transportation assistance, and Vergara provided her with a bus pass.

¶ 15    Respondent testified next. She acknowledged that her phone was sometimes disconnected because she could not pay the bill. She explained that she preferred virtual visits because she did not have a vehicle and did not want to risk being late by relying on others for rides. When questioned about LCFS's offer to transport her to visits, respondent claimed that she did not understand the offer and thought that the minor would be brought to her residence. Respondent confirmed that she did not attempt to use the bus pass provided by LCFS to have in-person visitation. Respondent denied intentionally ingesting cocaine while at Fresh Start and claimed that she tested positive after storing medication in an old bottle where she once hid her cocaine. She said that leftover residue must have gotten on the medication. Respondent confirmed that she did not send the minor any clothes, shoes, or gifts but claimed that it was because she did not know where to drop them off. Respondent confirmed that she heard Streadwick's and Vergara's testimonies, did not disagree with them, and did not wish to make any corrections.

¶ 16    The court found respondent unfit by clear and convincing evidence on all three of the alleged grounds. As to the "reasonable degree" ground, the court cited Streadwick's and Vergara's testimonies. Specifically, the court noted that respondent did not visit the minor in person during the pendency of the case. The court also found that respondent failed to inquire as to the minor's welfare; provide her support; or send cards, gifts, or letters. As to the "reasonable efforts" ground, the court noted respondent's recent termination of parental rights as to her other children and cited her failure to complete services, address her substance abuse issues, and complete an integrated assessment. The court stated that respondent was referred for substance abuse and mental health assessments and highlighted the timing of respondent's Gateway treatment, stating,

7

"THE COURT: Mother eventually did enter Gateway at the end of the nine-month period following the adjudication in January of 2023, although her substance abuse issues have been longstanding.

Mother has never completed any of the services. Again with respect to Gateway, although she complete the inpatient portion of the program, she didn't complete aftercare, which is outside the nine-month period.

Again, she was removed from the aftercare program for testing positive for cocaine." To support its finding on the "reasonable progress" ground, the court again cited respondent's failure to engage in services, complete an integrated assessment, remain in contact with LCFS, or establish a bond with the minor.

¶ 17 The court then proceeded to the best interests hearing, where the foster father testified that he and his wife had cared for the minor from birth and that she did not know any other home. He testified that he and his wife love the minor. They also have four biological sons who live in their home, all of whom care for the minor as a little sister and love her dearly. The minor calls her foster parents "mama" and "dada." She is established at a local daycare, as both foster parents are employed as educators. The foster father testified that they are able to meet the minor's needs. They are committed to adopting the minor. The foster family's extended family is very involved in the minor's life, the family has traveled together for vacations, and the minor is not treated any differently than the biological children. The foster parents facilitate regular contact between the minor and her biological siblings and confirmed their intention to continue to do so post-adoption.

¶ 18 Thereafter, Vergara testified that she conducted monthly home visits at the foster home and found it to be comfortable, safe, and appropriate. She described the relationship between the minor and her foster parents as having "a lot of love and affection" and stated that the minor feels

safe and loves the family. The minor and the foster parents have "an amazing bond." Vergara also observed the foster siblings playing with the minor and could see the love between them. Vergara testified that adoption by the foster family is in the minor's best interests.

¶ 19        The court found by a preponderance of the evidence that the termination of respondent's parental rights was in the minor's best interests.

¶ 20        Respondent's appeal followed.

¶ 21                                II. ANALYSIS

¶ 22                A. Adjudicatory Hearing Conducted in Respondent's Absence

¶ 23        On appeal, respondent argues that she was deprived of her due process rights when the court conducted the adjudicatory hearing in her absence. In the alternative, she argues that the denial of her motion to continue the adjudicatory hearing was an abuse of discretion. For the reasons that follow, we dismiss this portion of the appeal for lack of jurisdiction.

¶ 24        Before we can reach the merits of respondent's argument, we must determine whether we have jurisdiction to review issues arising from the April 28, 2022, adjudicatory hearing. We review jurisdictional issues *de novo*. *In re Ay. D.*, 2020 IL App (3d) 200056, ¶ 36.

¶ 25        Generally, an adjudicatory order is not a final and appealable order. *In re M.J.*, 314 Ill. App. 3d 649, 654-55 (2000). Rather, "an adjudicatory order is a step in the procedural progression leading to the dispositional order," *In re D.R.*, 354 Ill. App. 3d 468, 473 (2004). Because a dispositional order is the final order setting forth the minor's placement, an appeal from an adjudicatory hearing is properly brought following the entry of a dispositional order. *Id.* Illinois Supreme Court Rule 660(b) (eff. Oct. 1, 2001) provides that appeals from final judgments under the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-1 *et seq.* (West 2020)) are governed by the same rules applicable to civil appeals. Accordingly, a party must file a notice of appeal "within 30

9

days after the entry of the final judgment appealed from," unless a late notice of appeal is permitted by the court. Ill. S. Ct. R. 303(a), (d) (eff. July 1, 2017).

¶ 26 Here, respondent should have filed her notice of appeal within 30 days of entry of the May 24, 2022, dispositional order (by June 23, 2022) to timely raise issues arising from the adjudicatory hearing. Instead, respondent waited until October 23, 2023, which is well after the 30-day deadline. The record does not indicate that respondent obtained leave to file a late notice of appeal. Thus, we lack jurisdiction and must dismiss this portion of the appeal.

¶ 27     B. Unfitness Findings and Admission of Evidence at Fitness Hearing

¶ 28 Respondent next argues that the trial court's finding of unfitness was against the manifest weight of the evidence. She argues that the record shows that she was interested in contact with the minor and that she had virtual visits with her "on several occasions." In further challenging the court's finding, respondent argues that the court erroneously admitted evidence pertaining to her discharge from Fresh Start and positive drug tests. We address each argument in turn.

¶ 29 A trial court's finding of unfitness is afforded great deference on appeal, as it is in the best position to evaluate the credibility of the witnesses. *In re Tiffany M.*, 353 Ill. App. 3d 883, 889-90 (2004). We will not disturb a trial court's finding unless it is against the manifest weight of the evidence. *Id.* at 890. "A factual finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the determination is unreasonable, arbitrary, and not based on the evidence." *Id.* If a single alleged ground of unfitness is sufficiently proven, we need not review additional grounds of unfitness cited by the trial court. *Id.* at 891.

¶ 30 The State alleged three separate grounds of unfitness, and we begin our analysis with the court's finding that respondent failed to maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare. The State only needs to prove the absence of a reasonable

10

degree of interest, concern, *or* responsibility in order to satisfy this ground of unfitness, *In re J.B.*, 2014 IL App (1st) 140773, ¶ 51.

¶ 31    The "reasonable degree" ground focuses on the reasonableness, not the success, of a parent's efforts, taking into consideration the parent's individual difficulties and circumstances. *In re Je. A.*, 2019 IL App (1st) 190467, ¶ 50. Difficulties and circumstances to consider include "difficulty in obtaining transportation, the parent's poverty, statements made by others to discourage visitation, and whether the parent's lack of contact with the children can be attributed to a need to cope with personal problems rather than indifference towards them." *In re T.D.*, 268 Ill. App. 3d 239, 246 (1994). If visitation is not feasible for the parent, he or she may demonstrate concern and interest via letters, cards, gifts, and telephone calls. *Id.* Nonetheless, parental fitness is not established merely by showing some interest or affection for the minor. *Je. A.*, 2019 IL App (1st) 190467, ¶ 50. Failure to comply with a service plan and inconsistent visitation have both been deemed sufficient to justify a finding of unfitness. *Id.* The court can consider relevant evidence from any time period when evaluating this ground. See 750 ILCS 50/1(D)(b) (West 2020).

¶ 32    Here, respondent emphasizes her virtual visits with the minor, arguing that they should not be assigned any less credit than in-person visits, that she visited virtually on "several occasions," and that the visits "show a degree of interest and concern." However, the record does not support respondent's contention. A mere showing of "some interest or affection" is not enough to establish fitness, and respondent must do more than simply state that she harbored interest or concern for the minor. See *Je. A.*, 2019 IL App (1st) 190467, ¶ 50. Both Streadwick's and Vergara's testimonies contradict respondent's claim that she had any meaningful visitation with the minor. Streadwick testified that respondent's visitation was extremely limited and that she could count the virtual visits "on one hand." Vergara could only recall one virtual visit during her time as the

11

caseworker. Respondent, by choice, did not see the minor in person at all after she was born, though she was offered transportation for in-person visits; she had not seen the minor virtually since May 2022. Respondent did not dispute these facts at the fitness hearing.

¶ 33        While we are cognizant that respondent struggled financially and lacked transportation, LCFS provided respondent with both a free bus pass and offers to provide transportation at no charge. Still, respondent refused the opportunities and elected to forego nearly all contact with the minor without explanation. Respondent was unemployed during the pendency of this case, so there was no discernable impediment to meeting the minor in-person or virtually. As such, we cannot attribute respondent's failure to participate in visitation to anything other than a lack of interest in and concern for the minor. While the lack of visitation may be mitigated by letters, gifts, cards, or telephone calls, the record shows that respondent failed to do any of these things.

¶ 34        Respondent further argues that the court's finding was against the manifest weight of the evidence because it erroneously concluded that she did not complete any of her service plan, even though she completed substance use and psychiatric evaluations at Gateway. The documents evidencing the evaluations completed at Gateway were filed, and the court presumably considered these before rendering its decision. *In re Alexander R.*, 377 Ill. App. 3d 553, 561 (2007) (holding that it is improper for a reviewing court to assume a trial court erred in the absence of an affirmative showing of said error). Although the court found that respondent did not complete any of her services, we interpret the use of the word "complete" to account for the fact that the service plan was not satisfied. Meaningful progress is not demonstrated merely by completing the evaluations. Rather, the evaluations were the first step—respondent was then expected to utilize the evaluations to obtain appropriate treatment. Respondent did not follow through with the recommendations of the substance abuse evaluation, as she relapsed approximately two weeks after leaving Gateway,

12

missed follow-up drug tests, and never sought further treatment. The record is also devoid of evidence that respondent complied with any recommendations from the psychiatric evaluation, which included medication compliance and individual therapy.

¶ 35 Respondent consistently failed to demonstrate a reasonable degree of interest, concern, and responsibility for the minor's welfare. We acknowledge that respondent's relapse after attending Gateway does not render her unfit, as the "reasonable degree" ground measures the reasonableness and not the success of the parent's efforts. However, it is unreasonable that she never sought mental health treatment and waited to seek substance use treatment until after the minor had been in foster care for over one year. We also note that respondent only sought treatment after the State filed its petition to terminate her parental rights. Moreover, it is unreasonable that, after respondent relapsed, she failed to try to regain sobriety or re-enter treatment. For these reasons, we cannot hold that the court's finding of unfitness based upon respondent's failure to maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare was against the manifest weight of the evidence. Because only one ground of unfitness needs to be proven to affirm the court's ruling, we need not analyze the remaining grounds of unfitness. *Tiffany M.*, 353 Ill. App. 3d at 891.

¶ 36 We next address respondent's challenge to the admission of evidence at the fitness hearing. Respondent contends that the court should have limited the admission of evidence at the fitness hearing to events which occurred between April 28, 2022 (date of adjudication), and January 28, 2023, and that it erred by admitting evidence of her relapse and discharge from Fresh Start in March 2023.

13

¶ 37    A court's admission of evidence is reviewed for an abuse of discretion, which occurs where "no reasonable person would adopt the trial court's view." *In re J.C.*, 2020 IL App (2d) 200063, ¶ 28.

¶ 38    In addition to the "reasonable degree" ground of unfitness, the State alleged that respondent was unfit based upon the "reasonable efforts" and "reasonable progress" grounds. When analyzing these two grounds, the court must limit its inquiry to "the efforts made by the parent within the nine-month period following the adjudication of neglect. Evidence of the parent's efforts outside that period may not be considered." *In re Haley D.*, 2011 IL 110886, ¶ 88.

¶ 39    We acknowledge that evidence outside of the initial nine-month period following adjudication was admitted at the hearing; however, respondent's argument disregards that the State also alleged unfitness based upon the "reasonable degree" ground, a finding we have already deemed appropriate. The "reasonable degree" ground is not time-limited, and the court was free to consider respondent's failed drug tests and Fresh Start discharge in March 2023 in this context, as it was certainly relevant. There is no bright line rule prohibiting evidence from outside the nine-month period whenever the "reasonable progress" and "reasonable efforts" grounds are at issue, and such evidence is properly admitted if it is relevant to another alleged ground of unfitness. *Alexander R.*, 377 Ill. App. 3d at 556. The court was not required to explicitly state that it considered the evidence for this sole purpose, although it essentially did so by acknowledging that it fell outside of the nine-month period for the "reasonable progress" and "reasonable efforts" analyses. See *id.* at 553, 561; *contra In re Brianna B.*, 334 Ill. App. 3d 651, 657-58 (2002). For these reasons, the court did not abuse its discretion when it admitted evidence of respondent's positive drug tests from March 2023 and her subsequent dismissal from Fresh Start.

¶ 40    C. Best Interests Findings

14

¶ 41    Respondent next argues that the trial court's finding that it was in the minor's best interests to terminate her parental rights was against the manifest weight of the evidence. In a conclusory fashion, respondent argues that "there was sufficient evidence to show that she did care for [the minor] and tried to be involved in her life as much as she possibly could."

¶ 42    A court's best interests determination will not be disturbed unless the finding was against the manifest weight of the evidence. *In re S.D.*, 2011 IL App (3d) 110184, ¶ 33.

¶ 43    After a parent is found unfit, the State must prove by a preponderance of the evidence that the termination of parental rights is in the minor's best interests. *In re C.D.*, 2020 IL App (3d) 190176, ¶ 40. At this stage, the parent's right and interest in maintaining a relationship with the minor must yield to the minor's best interests, including the "interest to live in a stable, permanent, loving home." *Id.* ¶ 34. A court must consider the following factors "in the context of the child's age and developmental needs": "(a) the physical safety and welfare of the child, including food, shelter, health, and clothing; (b) the development of the child's identity; (c) the child's background and ties, including familial, cultural, and religious; (d) the child's sense of attachments, including: (i) where the child actually feels love, attachment, and a sense of being valued (as opposed to where adults believe the child should feel such love, attachment, and as sense of being valued); (ii) the child's sense of security; (iii) the child's sense of familiarity; (iv) continuity of affection for the child; (v) the least disruptive placement alternative for the child; (e) the child's wishes and long-term goals; (f) the child's community ties, including church, school, and friends; (g) the child's need for permanence which includes the child's need for stability and continuity of relationships with parent figures and with siblings and other relatives; (h) the uniqueness of every family and child; (i) the risks attendant to entering and being in substitute care; and (j) the preferences of the persons available to care for the child." 705 ILCS 405/1-3(4.05) (West 2020).

15

"[T]he court may consider the nature and length of the child's relationship with her present caretaker and the effect that a change in placement would have upon her emotional and psychological well-being." *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19. The court may also consider the likelihood of adoption. *In re Za. G.*, 2023 IL App (5th) 220793, ¶ 54.

¶ 44        Respondent essentially asks us to re-weigh the evidence considered by the court and reach a contrary conclusion. However, "the reviewing court must not retry the case but, instead, must review the trial court's findings to determine if the findings are against the manifest weight of the evidence." *Za. G.*, 2023 IL App (5th) 220793, ¶ 31. Although the court did not identify which evidence it attributed to each statutory factor, it was not required to do so. *In re Davon H.*, 2015 IL App (1st) 150926, ¶ 78 ("The trial court's best interest determination need not contain an explicit reference to each of [the statutory] factors and [the appellate court] need not rely on any basis used by the trial court in affirming its decision.").

¶ 45        Respondent failed to show that she could provide the minor with food, shelter, and clothing. Respondent was unemployed and without stable housing throughout the pendency of the case. In fact, respondent refused to disclose her address altogether and frequently made claims of imminent moves. Respondent did not successfully complete any substance abuse or mental health treatment or otherwise demonstrate the ability to be physically, emotionally, or mentally prepared to care for the minor. Vergara testified that the foster family's home, on the other hand, was safe and appropriate and that the foster parents were able to provide for the minor's needs. Since birth, the foster family is the only family the minor has known. The minor formed close, familial attachments to the foster family, and she calls the foster parents "mama" and "dada," has a strong bond with their biological children, and is supported and loved by their extended family members. The foster family has provided consistent and secure relationships for the minor. In contrast, respondent's

16

presence in the minor's life has been limited, sporadic, and unreliable. The foster family facilitates the minor's relationship with her three biological siblings and intends to continue doing so, which will aid in the minor's development and sense of identity. The evidence supported the conclusion that removing the minor from the only family structure she has ever known would damage her emotional and psychological well-being. See *Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19. If the minor is freed for adoption, the foster family is committed to adopting her. See *Za. G.*, 2023 IL App (5th) 220793, ¶ 54. For these reasons, we cannot conclude that the court's finding that the termination of respondent's parental rights was in the minor's best interests was against the manifest weight of the evidence.

¶ 46                                    D. Counsel's Performance

¶ 47        Lastly, respondent argues that she received the ineffective assistance of counsel at the fitness hearing because her trial counsel (1) did not object to the admission of evidence pertaining to respondent's discharge from Fresh Start and (2) failed to correct Streadwick's and Vergara's testimonies that respondent did not complete the evaluations recommended in her service plan. We disagree.

¶ 48        A claim of ineffective assistance of counsel that is raised for the first time on appeal is reviewed *de novo*. *In re H.C.*, 2023 IL App (1st) 220881, ¶ 87.

¶ 49        Parties to a proceeding under the Act have the right to be represented by counsel, and they are entitled to the effective assistance of their counsel. 705 ILCS 405/1-5 (West 2020); *In re Br. M.*, 2021 IL 125969, ¶ 42. As such, a party's claim of ineffective assistance of counsel is evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Br. M.*, 2021 IL 125969, ¶ 43. First, respondent must show that counsel's performance was deficient, which is defined as performance that falls "below an objective standard of reasonableness." *Id.* at 688.

17

Second, respondent must show that counsel's error prejudiced her case. *Id.* at 692, 694. "The defendant must show that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

¶ 50 We first address respondent's concern that counsel did not object to evidence of her discharge from Fresh Start in March 2023 based upon it falling outside the nine-month period to be considered under the "reasonable efforts" and "reasonable progress" grounds of unfitness. As discussed above, the evidence pertaining to respondent's discharge was properly admitted at the fitness hearing, as it supported the State's allegation that respondent was unfit due, in part, to her failure to maintain reasonable degree of interest, concern, or responsibility for the minor's welfare. This ground is not time-limited, and the court was free to consider that evidence for that purpose. See *Alexander R.*, 377 Ill. App. 3d at 556. Evidence of respondent's relapse and discharge from Fresh Start was relevant to its analysis of the "reasonable degree" ground. As such, respondent's argument that she received ineffective assistance of counsel for counsel's failure to object to this evidence fails under the first *Strickland* prong, as the objection would have been futile. *People v. Lucious*, 2016 IL App (1st) 141127, ¶ 33 ("Necessarily, counsel cannot be deemed ineffective for failing to raise an objection to admissible evidence—such an objection would be futile."). Counsel's actions, or lack thereof, were objectively reasonable under the circumstances. Because both *Strickland* prongs must be satisfied, we cannot hold that respondent received ineffective assistance of counsel on this basis. See *Strickland*, 466 U.S. at 697.

¶ 51 Respondent's second ineffective assistance of counsel claim also fails. Respondent argues that counsel's failure to highlight that she completed the evaluations from her service plan "caused unimaginable harm to her case." An ineffective assistance claim must be accompanied by *both* a showing that counsel's performance was deficient *and* that it caused respondent prejudice.

18

*Strickland*, 466 U.S. at 697. Even if we were to hold that counsel's performance was deficient in this regard, respondent did not sufficiently allege prejudice. *Id.* ("*** [T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

¶ 52     Respondent did not develop her argument beyond a conclusory statement of "unimaginable harm to her case" to support her claim. It eludes this court how the outcome of the case would have been different had counsel emphasized respondent's evaluations at the hearing. The record shows that respondent's Gateway documentation, which included detailed reports of her substance abuse and mental health evaluations, was tendered to the court and filed. As such, we have no reason to believe that these documents were not reviewed by the court prior to its ruling. *Alexander R.*, 377 Ill. App. 3d at 561. We also note that respondent's recommended services were not limited solely to the evaluations—she was expected to follow through with the recommendations issued pursuant to the evaluations, which she failed to do. Respondent's failure to follow the recommendations, combined with the other overwhelming evidence of respondent's unfitness as outlined herein, demonstrates that her case was not prejudiced by counsel's actions. The outcome of her case would not have been different had her counsel drawn the court's attention to her evaluations. Therefore, respondent's argument fails under the second *Strickland* prong, and she did not receive the ineffective assistance of counsel.

¶ 53                                        III. CONCLUSION

¶ 54     For the reasons stated herein, we affirm the judgment of the circuit court of Will County.

¶ 55     Appeal dismissed in part. Affirmed.

19